526 A.2d 1257

In Re: Assessment Appeal of Salem Crossroads Historical Restoration Society, Inc. Salem Crossroads Historical Restoration Society, Inc., Appellant.

Argued March 26, 1987, before Judges MACPHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Ross Bash*, for appellant.

*John N. Scales, Scales and Murray*, for appellee.

OPINION BY JUDGE MACPHAIL, June 5, 1987:

Salem Crossroads Historical Restoration Society, Inc. (Society) has appealed from an order of the Court of Common Pleas of Westmoreland County which denied the Society's request for tax exempt status for five properties which it either owns or maintains in the Salem Crossroads area.[1]

The Society is an organization with approximately 350 members whose purpose, as stated in its Articles of Incorporation, is "[t]o plan, direct, promote and control the historical restoration of Salem Cross Roads (Delmont) as it was known in the 1830-1870 period." The Society also emphasizes its educational goal of providing a living history of life in the mid-1800s through various demonstration projects. In furtherance of its goals, the Society has gained ownership or control over the five properties here at issue, which include a

---

[1] Appellees are the Greensburg Salem School District, the Township of Salem and the County of Westmoreland.

147-acre farm and farmhouse, a museum/headquarters building and a restored log house.[2]

· · The Society's claim for tax exempt status is made under Section 204(a)(7), (9) and (12) of The General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-204(a)(7), (9) and (12) which provides pertinently as follows:

The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

(7) All other public property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same, but this shall not be construed to . . . exempt from taxation any privilege, act or transaction conducted upon public property by persons or entities which would be taxable if conducted upon nonpublic property regardless of the purpose or purposes for which such activity occurs, even if conducted as agent for or lessee of any public authority;

. . . .

(9) All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public

---

[2] Of the five properties at issue, only the farmhouse and log house properties are actually titled in the Society's name. Both the headquarters building and a property referred to as the "Ford Garage Agency" are owned by the Pittsburgh History and Landmarks Foundation. The last property, known as the Shields farm, is titled in the name of Delmont Borough due to the necessity, for state funding purposes, of having a municipality as the titled owner. By oral and written agreements, Appellant has exclusive control over all the properties here involved.

charity, and necessary for the occupancy and enjoyment of such institutions so using it;

. . . .

(12) All property, including buildings and the land reasonably necessary thereto, provided and maintained by public or private charity, and used exclusively for public libraries, museums, art galleries, or concert music halls, and not used for private or corporate profit, so long as the said public use continues. . . .

Following a *de novo* trial, the common pleas court concluded that the Society did not constitute a "purely public charity" and, thus, could not qualify for an exemption under subsections (9) and (12) of Section 204(a) of the Law. The court also found that none of the properties met the subsection (7) prerequisite of being "public property" so as to qualify for an exemption thereunder.[3]

Article VIII, Section 2(a)(v) of the Pennsylvania Constitution authorizes the legislature to provide tax exempt status to "institutions of purely public charity." Pa. Const. art. VIII, §2(a)(v). Thus, we are mindful that any legislative grant of a tax exemption to charitable organizations is constitutionally limited to those organizations which qualify as "purely public charities." Moreover, statutory provisions which exempt persons or properties from taxation must be strictly construed. Section 1928(b)(5) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1928(b)(5). The Society, of course, bears the heavy burden of proving its right to an exemption. *Ap-*

---

[3] Our scope of review of the common pleas court's ruling is limited to a determination of whether the decision constitutes an abuse of discretion or lacks supporting evidence. *Council Rock School District v. G.D.L. Plaza Corp.*, 91 Pa. Commonwealth Ct. 176, 496 A.2d 1298 (1985), *aff'd*, Pa. , 526 A.2d 1173 (No. 71 E.D. Appeal Dkt. 1986, filed May 22, 1987).

*peal of Lutheran Home at Topton,* 100 Pa. Commonwealth Ct. 244, 515 A.2d 59 (1986).

The issue regarding which characteristics define an organization as a "purely public charity" is a difficult one which has most recently been addressed by our Supreme Court in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985) *see also G.D.L. Plaza Corp. v. Council Rock School District,* Pa. , 526 A.2d 1173 (No. 71 E.D. Appeal Dkt. 1986, filed May 22, 1987). In that case, five factors were identified for application in determining what constitutes a "purely public charity":

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services:

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*Id.* at 22, 487 A.2d at 1317. Applying these characteristics to the facts of the instant case, we conclude that the Society does not qualify as a "purely public charity."

The record reflects that the Society is comprised of individuals who share an interest in the history of the Salem Crossroads area during the period from 1830-1870. As described by the current President of the Society:

> We are planning to create early farm demonstrations at the Shields Farm. We also want to build a visitor's center. We want to identify our historic district, we want our village enlarged in greater detail with shops and bakeries flourishing as they were in the 1830 period.
>
> . . . .

We are mainly interested in educating the
people in our area and all those who want to
come to see the living history and the rich heri-
tage that we have enjoyed at Salem Crossroads.
Notes of Testimony at 23, Reproduced Record at 42a.
Thus, the ultimate goal of the Society is to recreate a
way of life in its community reminiscent of the mid-
1800s and, in so doing, provide a "living museum" of
that time period. While such a goal is, indeed, laudable
and may benefit the community as a whole, we do not
think the Society can therefore be considered a "purely
public charity."

Specifically, we do not think that the Society's goals
can be viewed as "relieving the government of some of
its burden." In *YMCA of Germantown v. Philadelphia,*
323 Pa. 401, 413-14, 187 A. 204, 210 (1936), the
Supreme Court recognized that:

Taxes are not penalties but are con-
tributions which all inhabitants are expected to
make . . . for the support of the manifold activi-
ties of government. . . . Any institution which
by its charitable activities relieves the govern-
ment of part of this burden is conferring a pecu-
niary benefit upon the body politic, and in re-
ceiving exemption from taxation it is merely be-
ing given a 'quid pro quo' for its services in
providing something which otherwise the gov-
ernment would have to provide. . . . [T]he ex-
emption from taxation of institutions of public
charity is founded on the fact that such a charity
is assuming a share of the public burden.

While we recognize that government activities and ex-
penditures are not limited to providing aid to the poor,
elderly or infirm and include support of cultural in-
stitutions such as museums and public libraries, we do
not think the Society's concept of providing a "living

museum" is one which "assumes a share of the public burden."

In *Hospital Utilization Project*, 507 Pa. at 12, 487 A.2d at 1311, the Court took judicial notice of a regulatory definition of "charitable organization" which includes the following pertinent provision:

> Nonprofit civic or community development organizations and organizations which have an educational, spiritual, or religious purpose, except those falling within the definitions of religious organization for religious purpose and nonprofit education institution as set forth in this section, do not fall within the category of a charitable organization.

61 Pa. Code §32.1(iv). While this definition is not binding in the instant case, we believe it is generally supportive of the result we have reached. We think the Society is akin to a nonprofit community development organization which, while performing good works, is not entitled to be relieved of its tax responsibility. Keeping in mind that we must strictly construe the right to tax exempt status, we do not believe the Society has met its heavy burden of showing that it serves a purely public and charitable purpose.

In so ruling, we find the following observations made by this Court in another matter to be especially pertinent:

> Often, when a group with laudable aims has, through the exercise of diligence and ingenuity, benefited the community at no pecuniary gain to itself, our impulse is to consider it, broadly speaking, as charitable in nature. The law governing charitable exemptions, however, places the burden on the taxpayer to bring itself within the ambit of the charitable exemption. . . . Such exemptions are strictly construed against the tax-

payer. . . . The law thereby restrains our liberality by reminding us that when the tax burden is lifted from the shoulders of one, it must be redistributed among those who remain nonexempt.

*Homewood-Brushton Citizens Renewal Council v. City of Pittsburgh*, 27 Pa. Commonwealth Ct. 630, 632-33, 367 A.2d 405, 407 (1976) (citations omitted).

Having concluded that the Society is not a "purely public charity," we affirm the common pleas court's ruling that an exemption may not be granted under subsections (9) and (12) of Section 204(a) of the Law.[4]

With regard to Section 204(a)(7), which exempts "public property used for public purposes," only the Shields farm is at issue since legal title to that property is held by Delmont Borough. Counsel for the Society conceded at oral argument, however, that the farm is not actually "public" property. It appears from the record that title was placed in the Borough in order to obtain state funding for its purchase, but that the Society actually controls the property and pays all costs, including any taxes due, relative to its management. We do not believe that tax exempt status may be granted solely because title to the property is held by the Borough of Delmont. We, accordingly, agree with the common pleas court's denial of tax exempt status under Section 204(a)(7) of the Law.

While it is clear from the foregoing discussion that we would affirm the common pleas court's resolution of

---

[4] We note that, contrary to the decision of the common pleas court, our ruling is not grounded on the Society's failure to benefit persons who are legitimate subjects of charity. It is clear that the Society intends its work to benefit the general public. We think that the general public may be a legitimate subject of charity in cases involving uses such as playgrounds, libraries and museums, all of which may be exempted from taxation under the Law.

this matter, we are constrained to note that the Society's appeal to this Court was not filed in a timely manner from the June 20, 1985 final order of the court of common pleas, but rather followed the court's resolution of the Society's motion for post-trial relief by opinion and order dated March 18, 1986.[5] The motion for post-trial relief was filed pursuant to Pa. R.C.P. No. 227.1. Since the Society's appeal to the common pleas court was taken pursuant to Section 518.1 of the Law, 72 P.S. §5020-518.1, however, it clearly was a statutory appeal to which Pa. R.C.P. No. 227.1 does not apply unless specifically authorized by statute or local rule. *Johnston v. Department of Transportation,* 102 Pa. Commonwealth Ct. 183, 517 A.2d 585 (1986); *Savko v. Board of Property Assessment, Appeals and Review of Allegheny County,* Pa. Commonwealth Ct. (Reargument granted. Case pending.), 516 A.2d 107 (1986). Since the Law makes no provision for post-trial motions and there appears to be no applicable local rule, we must quash the instant appeal *sua sponte* on jurisdictional grounds. Our resolution of the merits of the case has been undertaken in the interest of judicial economy in the event it is later determined that we have erred in quashing the appeal as untimely. *See Schuylkill County Tax Claim Bureau v. Tremont Township,* 104 Pa. Commonwealth Ct. 338, 522 A.2d 102 (1987).

## ORDER

Appellant's appeal from the order of the Court of Common Pleas of Westmoreland County entered March 18, 1986 is dismissed as untimely filed.

---

[5] The notice of appeal to this Court was filed on April 14, 1986.