535 A.2d 247

Concetta Ciaffoni *v.* Washington County Board for the Assessment of Appeals. Concetta Ciaffoni *v.* Washington County et al. McGuffey School District, Appellant.

Concetta Ciaffoni *v.* Washington County Board for the Assessment of Appeals. Concetta Ciaffoni *v.* Washington County et al. Trinity Area School District, Appellant.

Concetta Ciaffoni *v.* Washington County Board for the Assessment of Appeals. Concetta Ciaffoni *v.* Washington County et al. Avella Area School District, Appellant.

136

Argued October 8, 1987, before Judges MACPHAIL and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Kathleen Smith-Delach, Phillips & Faldowski,* for appellant, McGuffey School District.

*Donald D. Saxton, Jr., Saxton & Curran,* for appellant, Trinity School District.

*John W. McCreight, McCreight, Marriner & Crumrine,* for appellant, Avella Area School District.

*E. J. Julian,* for appellee, Concetta Ciaffoni.

*George Retos, Jr.,* for intervenor, Washington County et al.

OPINION BY JUDGE MACPHAIL, December 22, 1987:

Appellants McGuffey School District, Trinity School District, and Avella Area School District[1] appeal an order of the Court of Common Pleas of Washington County which reduced an assessment by the Washington County Board for the Assessment of Appeals (Board) of real estate owned by Appellee Concetta Ciaffoni. For the reasons set forth below, we must dismiss Appellants' appeals.

The property which is the subject of this appeal consists of eight parcels of reserve coal property in the McGuffey School District and one in the Trinity Area

---

[1] Although Avella Area School District filed a notice of joinder of appeal with this Court, pursuant to Pa. R.A.P. 512, it participated no further in the case.

School District, owned by Appellee. Appellee initially appealed the 1978 and 1979 assessments on eighteen parcels of coal property, including those in Appellants' districts, to the Board, pursuant to Section 701 of The Fourth to Eighth Class County Assessment Law (Law), Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §5453.701. After a hearing, the Board assessed a fair market value to the properties of $800.00 per acre.

Appellee subsequently appealed to the court of common pleas, claiming that the fair market value should be reduced to $100.00 per acre for one parcel and $200.00 per acre for all others. In a January 9, 1986 opinion, the trial court held that the fair market value on all eighteen coal properties owned by Appellee is $500.00 per acre. The court later dismissed Appellants' motion for post-trial relief and affirmed its previous order. Appellants' appeal to this Court followed.

Appellants raise the following issues before us: 1) whether the trial court erred in permitting Appellee's son, Robert Ciaffoni, to testify as an expert on the value of Appellee's property; 2) whether the court erred in finding Robert Ciaffoni's testimony sufficient to overcome the prima facie validity of the Board's assessment; and 3) whether the court erred in its valuation of Appellee's property at less than $800.00 per acre. We will address each issue seriatim, keeping in mind that in a tax assessment appeal, our scope of review is limited to a determination of whether the trial court committed an error of law or abused its discretion in determining a property's fair market value. *Harrisburg Park Apartments, Inc. Appeal*, 88 Pa. Commonwealth Ct. 410, 489 A.2d 996 (1985).

Initially, Appellants argue that Mr. Ciaffoni was not qualified to offer expert testimony on the value of Appellee's coal properties because he was not a mining engineer and because his experience with coal valua-

tion was gleaned from observing coal tax sales and was limited to his family's involvement in the coal mining industry. We reject this argument, and agree with the trial court that Mr. Ciaffoni is qualified based on "his extensive experience with coal properties and the purchase of coal rights for his father and mother [Appellee herein]."[2]

It is well settled that the qualification of an expert witness is a matter within the trial court's discretion. *City of Philadelphia v. Sorrentino*, 95 Pa. Commonwealth Ct. 236, 505 A.2d 373 (1986). The standard for an expert's qualifications is a liberal one, and as we stated in *Sorrentino*, " '. . . [i]f a witness has any reasonable pretension to specialized knowledge on the subject under investigation he may testify and the weight to be given to his testimony is for the jury [fact-finder].' " *Id.* at 240, 505 A.2d at 375 (quoting *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 338, 319 A.2d 914, 924 (1974)). "Although the witness must demonstrate some special knowledge or skill, there is no requirement that a witness acquire expertise as a result of formal schooling; expertise acquired by experience is expertise nonetheless." *Gottfried v. American Can Co.*, 339 Pa. Superior Ct. 403, 411, 489 A.2d 222, 226 (1985).

Our review of the record discloses no abuse of discretion on the part of the trial court in allowing Mr. Ciaffoni to testify as to the value of Appellee's property. We agree with the court that Mr. Ciaffoni's qualifications demonstrate extensive practical experience in real estate and coal properties, based on his involvement in the transfer of, as he testified, "thousands" of properties, including all of Appellee's eighteen coal properties, over the course of approximately forty years.

---

[2] Trial court's January 9, 1986 opinion at 9.

*See* Notes of Testimony from January 8, 1985 at 494-495, Reproduced Record at 101-102.

Appellants' second argument is that the trial court erred in determining that Mr. Ciaffoni's testimony was competent and credible enough to overcome the prima facie validity of the fair market value of Appellee's properties contained in the Board's assessment. We do not agree.

The order of proof in a tax assessment case was described by our Supreme Court as follows:

The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails.

*Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 221, 209 A.2d 397, 402 (1965). *See also City of Wilkes-Barre Industrial Development Authority v. Board of Tax Assessment Appeals of the County of Luzerne*, 89 Pa. Commonwealth Ct. 182, 492 A.2d 113 (1985). In the case at bar, Appellee presented the testimony of her son in response to the Board's assessment of the fair market value of her properties. Appellants could then rebut this evidence, and in such a case the weight to be given to all the evidence would be for the court to determine. *Deitch; Pittsburgh Des Moines Steel Co. v. Board of Property Assessment*, 103 Pa. Commonwealth Ct. 61, 519 A.2d 1080 (1987). The court, here, found against the weight of Appellants' evidence that Appellee's property was worth $800.00 per acre.

Finally, we reject Appellants' third argument that the trial court erred in finding that the fair market value

of Appellee's property was less than $800.00 per acre. Of course, in a tax assessment appeal, the trial court hears the matter de novo and must determine the fair market value of the property based on the competent evidence before it. *Commonwealth Trust Co. of Pittsburgh Appeal,* 88 Pa. Commonwealth Ct. 618, 491 A.2d 929 (1985).

As correctly noted by the trial court in the case *sub judice,* the court is to determine the weight of the experts' testimony in accordance with the approaches to valuation they have used. It is, furthermore, within the trial court's power as fact-finder to arrive at a fair market value, and this may be accomplished by choosing a value between those valuations offered by the expert witnesses. *See, e.g., City of Pittsburgh Appeal,* 92 Pa. Commonwealth Ct. 15, 498 A.2d 459 (1985), *petition for allowance of appeal denied,* 514 Pa. 636, 522 A.2d 1106 (1987); *Commonwealth Trust Co. of Pittsburgh Appeal.*

In determining the market values of the coal properties in question, the trial court applied the following formulation set forth by our Supreme Court in 1936:

The factors to be considered in determining the market value of coal lands have frequently been stated by this court. Besides the prices paid in sales of similar lands due regard must be given to the physical features of the property to be valued. There should be taken into account the location, the formation of the coal strata, the number of veins, their depth, thickness, pitch, basins, their proximity to outcrop, and the character of the separating rock formation; the quality of the coal, and whether of a gaseous or non-gaseous nature; the kind of overlying surface; the availability of the coal and difficulty in mining it; the probable quantity of the merchantable coal

in the ground with allowance for loss in mining; the state of development of the property, the demand for the product, and all elements which a prudent purchaser would take into consideration. . . .

*Philadelphia & Reading Coal & Iron Co. v. Commissioners of Northumberland County,* 323 Pa. 185, 189, 186 A. 105, 108 (1936).

We believe the court appropriately considered the above-cited factors in determining the fair market value of Appellee's properties, including location and topography of each parcel, profit, characteristics and quality of the coal, timing of production, mining rights and undivided interests, and the presence of oil or natural gas wells.[3] The $500.00 per acre value ultimately assigned to Appellee's properties, including the parcels before this Court, was between the $800.00 per acre figure originally assessed by the Board and recommended by Appellants' expert witness, and the $200.00 or $100.00 per acre amount favored by the testimony of Mr. Ciaffoni. This was a proper exercise of discretion by the trial court, as fact-finder, to make an independent valuation of the properties in question based on the evidence before him.

Although we would affirm the trial court's opinion based on the foregoing discussion, we must dismiss Appellants' appeals to this Court as untimely filed. The appeals were not filed within thirty days of the trial court's January 9, 1986 opinion and order, but followed the court's April 18, 1986 disposition of Appellants' motions for post-trial relief, filed pursuant to Pa. R.C.P. No. 227.1.[4] As we previously have held, in a statutory

---

[3] *See* opinion at 11-15.

[4] McGuffey's notice of appeal was filed May 13, 1986; Trinity's notice of joinder of appeal was filed May 14, 1986; and Avella's notice of joinder of appeal was filed May 19, 1986.

appeal, as that before us, Pa. R.C.P. No. 227.1 is inapplicable unless specifically authorized by statute or local rule. *Assessment Appeal of Salem Crossroads Historical Restoration Society, Inc.,* 106 Pa. Commonwealth Ct. 452, 526 A.2d 1257 (1987). The Law does not provide for post-trial relief, and we are unable to discover an applicable local rule. We will, therefore, quash the instant appeals *sua sponte* on jurisdictional grounds.[5]

## ORDER

The appeals in the above-captioned proceedings are hereby dismissed as untimely filed.

Judge PALLADINO concurs in the result only.

---

[5] As in the *Salem Crossroads* case, we have resolved the merits of this case, in the interests of judicial economy, in the event it is later determined that we have erred in dismissing the appeals on jurisdictional grounds. *See also Schuylkill County Tax Claim Bureau v. Tremont Township,* 104 Pa. Commonwealth Ct. 338, 522 A.2d 102 (1987).