539 A.2d 473

B.P. Oil Company, Inc., Appellant *v.* Delaware County Board of Assessment Appeals and Chichester School District, Trainer Borough and Marcus Hook Borough, Appellees.

B.P. Oil Company, Inc. *v.* Delaware County Board of Assessment Appeals and Chichester School District, Trainer Borough and Marcus Hook Borough. Chichester School District, Appellant.

Argued December 17, 1987, before Judges MAC-PHAIL and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*John E. Garippa,* with him, *Gregory G. Lotz, Garippa & Trevenen,* for appellant/appellee, B.P. Oil Company, Inc.

*Stephen J. Polaha,* with him, *Arthur Levy,* Of Counsel: *Eckell, Sparks, Levy, Auerbach, Monte & Moses,* for appellee/appellant, Chichester School District.

*A. Leo Sereni,* Solicitor for appellee/appellant, Delaware County Board of Assessment Appeals.

*Joseph F. Battle,* Solicitor for appellee/appellant, Trainer Borough.

*James F. Proud,* Solicitor for appellee/appellant, Marcus Hood Borough.

OPINION BY JUDGE MACPHAIL, March 23, 1988:

Before us for disposition are the cross-appeals of B.P. Oil Company, Inc. (Appellant) and Chichester School District of an order of the Court of Common Pleas of Delaware County (trial court) establishing the fair market value of property owned by Appellant, following Appellant's appeal of an assessment of the Delaware County Board of Assessment Appeals (Board).

The subject property consists of a total of 347.524 acres, 274.55 of which are located in the Borough of Trainer, and 55.18 of which are located in Marcus Hook.[1] For tax year 1983, the Trainer parcel was assessed at $1,540,000.00, and the Marcus Hook parcel was assessed at $815,000.00. Appellant appealed the assessments to the Board, and following a hearing, both were affirmed.

Appellant appealed the Board's determination to the court of common pleas and four *de novo* hearings were held. Appellant and the taxing authorities, including the school district, (Appellees herein) presented expert valuation testimony as to the appropriate fair market value of the subject property. On May 7, 1986, the trial court issued an opinion and order in which it applied an 8.63% equalization ratio to $30,500,000.00, the amount the court determined to be the fair market value of the subject property, to reach an assessed value of $2,632,150.00. This value was allocated between Ap-

---

[1] The remaining 17.791 acres are located in the City of Chester and are not at issue in this appeal.

pellees, with $1,842,505.00 assigned to Trainer, and $789,645.00 assigned to Marcus Hook.

Appellant raises the following issues before us: 1) whether the trial court erred in finding Appellees' expert witnesses more credible than Appellant's; 2) whether the trial court erred in relying on certain hearsay evidence presented by Appellees; 3) whether the court's determination of fair market value was contrary to the evidence; and 4) whether the court's reliance on a 1969 sale of the subject property was contrary to the evidence. We will address each issue seriatim, keeping in mind that in a tax assessment appeal, our scope of review is limited to a determination of whether the trial court committed an error of law or abused its discretion in determining a property's fair market value. *Harrisburg Park Apartments, Inc. Appeal,* 88 Pa. Commonwealth Ct. 410, 489 A.2d 996 (1985).

Initially, Appellant argues that the trial court erred in finding the testimony of Appellees' expert witnesses, Mr. McClatchy and Mr. deGrouchy, more credible than Appellant's witness, Mr. Lerario, because Appellees' witnesses had testified more often. Appellant challenges, specifically, the following language in the trial court's opinion: "All three men were qualified by this Court as experts, although Mr. McClatchy and Mr. deGrouchy have testified in Court more times than Mr. Lerario. Accordingly, we find the taxing authority's [sic] experts to be more credible." Trial court opinion at 5-6, Reproduced Record (R.R.) at 142a-143a.

It is well settled that in a tax assessment appeal, all matters of credibility and evidentiary weight are within the province of the trial court. *Mellon Bank, N.A. Appeal,* 78 Pa. Commonwealth Ct. 463, 467 A.2d 1201 (1983). Of course, the qualification of an expert witness is a matter within the trial court's discretion. *City of Philadelphia v. Sorrentino,* 95 Pa. Commonwealth Ct. 236, 505 A.2d 373 (1986).

In the case before us, Appellant does not contend that Appellees' witnesses were not qualified to offer expert testimony as to the fair market value of the subject property. Appellant does assert that the trial court erred in finding Appellees' witnesses more credible merely because they had testified more often. Whether or not the trial court's explanation for its credibility determination was appropriate, we will not second guess the court's exercise of discretion in this matter, as we are satisfied that that discretion was not abused. The court's opinion clearly indicates that it did not rely on Appellees' witnesses' valuations exclusively, and recognizes that the market value would lie between the expert opinions of these witnesses and Appellant's witness. *See* trial court opinion at 6, R.R. at 143a.

Appellant argues, secondly, that the trial court erred in considering testimony of Appellees' witness, Mr. deGrouchy, regarding the amount of marshland in the subject property. We reject Appellant's argument that this was hearsay evidence and find no error in the trial court's treatment of the marshland in its determination of fair market value.

Mr. Lerario, Appellant's witness, testified that, of the total 347.524 acres of the subject property, 93 acres along the Delaware River were marshy wetlands which would require filling and/or pilings for future development. Notes of Testimony (N.T.) from September 12, 1983 at 12, R.R. at 259a. Another witness testified for Appellant that 80-85 acres were marshy. *Id.* at 87, R.R. at 334a. Both of Appellees' witnesses, on the other hand, testified that the amount of marshland was 20 acres. N.T. from September 12, 1983 at 113, R.R. at 360a; N.T. from September 20, 1983 at 12, R.R. at 565a.

Appellant contends that the testimony of Mr. deGrouchy was hearsay, in that it was based on informa-

tion from the Borough of Trainer's engineer, Mr. Kelly. In its opinion, the trial court noted that the 20-acre figure testified to by Mr. deGrouchy was received from Mr. Kelly, but citing *Pittsburgh Outdoor Advertising Corp. Appeal,* 440 Pa. 321, 272 A.2d 163 (1970), the court concluded "that the use of Mr. Kelly's figure, even absent a formal report, was allowable." Trial court opinion at 8, R.R. at 145a.

In the *Pittsburgh Outdoor Advertising* case, the Supreme Court stated, in regard to valuation testimony proffered in a proceeding under the Eminent Domain Code:

The use by a testifying valuation expert of facts and figures derived from others and of which he himself does not have personal knowledge occurs frequently and is not a new development. To require direct personal knowledge by the expert witness of every element going to make up an appraisal figure would be to require the impossible. That there may thus be some hearsay evidence comprised within opinion evidence is undeniable. The components of an expert's opinion, however, go to weight, not admissibility.

*Id.* at 327, 272 A.2d at 166.

We reject Appellant's argument that *Pittsburgh Outdoor Advertising* is distinguishable because of the fact that the expert testimony there was based on a written appraisal report prepared by a qualified engineer, while in the instant case Mr. deGrouchy's testimony was based merely on calculations made in the engineer's office. *See* N.T. from September 12, 1983 at 116, R.R. at 363a. We agree with the trial court's conclusion that the above-quoted language of our Supreme Court is not limited to the written report at issue therein and that Mr. deGrouchy's "use of facts and figures derived from

others" was appropriate in the circumstances of this case.

Recognizing that a trial court's ruling on the admissibility of an expert opinion will not be reversed on appeal except for clear error, *see Bonin Reassessment Appeal,* 65 Pa. Commonwealth Ct. 278, 442 A.2d 43 (1982), we will not disturb the trial court's ruling admitting Mr. deGrouchy's testimony.

Appellant next challenges the trial court's determination of the fair market value of the subject property. In a tax assessment appeal, the trial court hears the matter *de novo* and must determine the fair market value of the subject property based on the competent evidence before it. *Commonwealth Trust Co. of Pittsburgh Appeal,* 88 Pa. Commonwealth Ct. 618, 491 A.2d 929 (1985). It is within the trial court's power as factfinder to arrive at a fair market value, which may be accomplished by choosing a value between those valuations offered by the expert witnesses. *Ciaffoni v. Washington County Board for the Assessment of Appeals,* 112 Pa. Commonwealth Ct. 135, 535 A.2d 247 (1987).

Appellees' witnesses both asserted opinions as to the fair market value of the subject property, based on a comparable sales, or market value, approach to valuation. As we have described previously, the use of comparable sales in arriving at a fair market value refers to the consideration of "the sale of similar property of the same type and class sold recently at a given price." *Lycoming County Appeal,* 100 Pa. Commonwealth Ct. 616, 620, 515 A.2d 335, 338 (1986). "The idea is that if similar property sold recently for a certain price, then the property we are concerned with would most likely sell for a similar price." *Id.*

Although the selling prices of the comparable properties used by Appellees' witnesses in their valuations ranged from $14,553.00 per acre to $58,140.00

per acre, with the exception of one property having a price of $90,174.00 per acre, Mr. deGrouchy testified that the subject property had a fair market value of $110,000.00 per acre, and Mr. McClatchy testified to a fair market value of $114,700.00 per acre. Appellant argues that there was no evidence presented to substantiate the witnesses' adjustments to the comparable sales figures made in determining fair market value. We disagree with Appellant's contention and conclude the trial court did not err in its choice of fair market value.

Appellees' experts testified that they adjusted their estimation of the value of the subject property based on a number of features not existing on the comparable properties. These features included: the amount of frontage on the Delaware River and the accessibility to the deep-water channel in the river which permits large oil tankers to dock and unload directly at Appellant's storage tanks;[2] the number of improvements to the property including bulkheads, piers, utilities and railways;[3] the existence of federal and state permits for new piers;[4] and the potential for expansion on the site.[5]

The trial court considered these factors in reaching the conclusion that "the subject property is superior to any of the comparable sales compared by the experts." Trial court's opinion at 7, R.R. at 144a. As this Court has stated:

> [Valuation] is not an exact science, and since no two properties are exactly alike, an expert must make adjustments to the sale price of the comparable property to aid him in forming an opinion. The adjustments may be as to time,

---

[2] N.T. from September 20, 1983 at 88, R.R. at 641a.

[3] N.T. from September 19, 1983 at 110, R.R. at 500a; and N.T. from September 20, 1983 at 80, R.R. at 633a.

[4] N.T. from September 20, 1983 at 86, R.R. at 639a.

[5] N.T. from September 20, 1983 at 88, R.R. at 641a.

condition, locality and size. Properties may be similar for comparison purposes without being identical, and the difference goes to the weight, i.e., the persuasive quality, of the expert's testimony. Of course, the weight accorded to an expert's testimony is for the fact finder to determine.

*Lycoming County Appeal,* 100 Pa. Commonwealth Ct. at 620, 515 A.2d at 338. We are satisfied that the trial court, as factfinder, properly weighed the experts' testimony in arriving at a fair market value between the values recommended by Appellant and Appellees.

Appellant's final argument is that the trial court erred in placing greater weight on the testimony of Appellees' witnesses because such testimony improperly relied upon a 1969 sale of the subject property. We disagree with Appellant's claim and conclude that the witnesses properly considered the previous sale as one factor in the determination of fair market value.

In 1969, Appellant purchased the subject property as part of a transfer of assets from the Atlantic Richfield Company, for a total consideration of $400,000,000.00. The Realty Transfer Tax Affidavit of Value, prepared on May 28, 1971, indicates that at the time of the transfer, the property had a fair market value of $53,667,408.00. *See* N.T. from September 12, 1983 at 44, R.R. at 291a. Appellant contends that this figure is not a reliable indication of fair market value because certain non-taxable property was included. Mr. Robert J. Johnson, a staff attorney with Appellant at the time of the transfer, testified that at that time the property had an actual value of $21,000,000.00, after allowing for tankage, pipeline and process units not assessable under Pennsylvania law.

Although both Mr. deGrouchy and Mr. McClatchy testified that they considered the previous sale of the subject property to be the most useful of all comparable

sales,[6] the trial court recognized that neither witness relied exclusively on this one sales figure. The court, itself, was wary of the $53,667,408.00 figure, which was $23,000,000.00 higher than the fair market value ultimately determined by the court. The judge stated, at the time the 1969 sale was first mentioned at trial, that "the comparative value of that sale to the subject property leaves a great deal to be desired" and that the sale "has minimal impact because of all the various ramifications of that particular sale." N.T. from September 12, 1983 at 47-48, R.R. at 294a-295a.

We are satisfied that the trial court·did not err in relying on the testimony of Mr. deGrouchy and Mr. McClatchy which relied, to some extent, on the 1969 sale price. The court was aware of the questionable credibility of the previous sale price, and we will not interfere with its discretion as factfinder to determine a fair market value based on the evidence presented.·

Chichester School District, in its cross appeal, raises two additional issues for our disposition: 1) whether the trial court erred in permitting Appellant's valuation expert, Mr. Lerario, to testify concerning the cost approach to value; and 2) whether the trial court erred in admitting an exhibit relating to the 1969 sale of the subject property.

Regarding the first issue, we note that Mr. Lerario did utilize the cost approach to valuation, in conjunction with the market value approach. The cost approach to property valuation entails estimating the value of the land and the value of the reproduction cost of the facility, less depreciation. *See Reichard-Coulston, Inc. v. Revenue Appeals Board Northampton County,* 102 Pa. Commonwealth Ct. 227, 517 A.2d 1372 (1986). Apply-

---

[6] *See* N.T. from September 19, 1983 at 26, R.R. at 415a; and N.T. from September 20,·1983 at 32, R.R. at 585a.

ing this analysis to the subject property, Mr. Lerario concluded that the fair market value was approximately $14 million dollars. He then averaged this figure with the $12,800,000.00 value he reached with the market value approach to arrive at his final fair market value of $13,500,000.00. N.T. from September 12, 1983 at 37, R.R. at 284a.

At the conclusion of Mr. Lerario's testimony, counsel for Appellees moved to strike his entire testimony because of his use of the reproduction cost approach in reaching a fair market value. The court overruled the objection, concluding that the propriety of Mr. Lerario's choice of valuation methodology would go to the credibility of the testimony and not its competency.

The school district now argues that the court erred in even considering Mr. Lerario's testimony due to the fact that in tax assessment appeals initiated prior to January 1, 1983, the reproduction cost approach had no probative value for any purpose in determining fair market value.[7] See, e.g., City of Wilkes-Barre Industrial Development Authority v. Board of Tax Assessment Appeals of the County of Luzerne, 89 Pa. Commonwealth Ct. 182, 492 A.2d 113 (1985). We reject the school district's argument and decline to remand the case to the trial court, as it requests, for a redetermination of value based upon the record without any consideration being given to Mr. Lerario's testimony.

We agree with the trial court's conclusion that even though Mr. Lerario's use of the cost approach was inappropriate in this case, his testimony should not be dis-

---

[7] In appeals initiated after January 1, 1983, reproduction cost, along with comparable sales and income approaches, must be considered in the calculation of fair market value for tax assessment purposes. See Section 7(d) of the Act of June 26, 1931, P.L. 1379, as amended, 72 P.S. §5348(d). The present appeal was initiated on November 26, 1982 and, therefore, this provision is not applicable.

qualified when he did not rely solely on the cost approach. Mr. Lerario's utilization of the market approach analysis provided a competent recommendation of fair market value on which the trial court could rely in reaching its ultimate determination of value. Any consideration given by Mr. Lerario to the cost approach in his final value of $13,500,000.00 is, as noted by the trial court, a matter of credibility which is for the trial court to determine. *Mellon Bank, N.A. Appeal.*

The school district's second argument is that the trial court erroneously admitted into evidence a document entitled "Transfer Tax Base" from which Mr. Johnson testified concerning categories of non-taxable assets that should not have been included in the $53 million figure indicated as the 1969 sale price of the subject property on the Realty Transfer Tax Affidavit of Value. There may be some merit to the school district's claim that the document was inadmissible because it was prepared two years after the Affidavit and was not prepared by Mr. Johnson, who was given the figures contained in the document and merely "accepted them at face value." N.T. from October 26, 1983 at 22, R.R. at 665a. We need not address this issue, however, inasmuch as we have concluded already that the trial court did not err in considering testimony relating to the entire $53 million as a comparable sales figure for market analysis purposes.

We, accordingly, affirm the order of the trial court establishing the 1983 assessment of the subject property.

## Order

The order of the Court of Common Pleas of Delaware County in the above-captioned proceedings is hereby affirmed.