551 A.2d 328

CNG Coal Company, a Corporation, Appellant *v.* Greene County Board of Assessment and Revision of Taxes, Appellee.

Argued May 23, 1988, before Judges CRAIG and McGINLEY, and Senior Judge NARICK, sitting as a panel of three.

*Ewing B. Pollock, Pollock, Pollock & Thomas,* for appellant.

*David C. Hook, Hook and Hook,* for appellee, Greene County Board of Assessment.

*Barbara A. Rizzo,* with her, *Robert T. Crothers, Peacock, Keller, Yohe, Day & Ecker,* for intervenor, West Greene School District.

OPINION BY JUDGE McGINLEY, December 2, 1988:

The Appellant CNG Coal Company brings two consolidated appeals involving a tax assessment of its property. In the first case, the Appellant appeals from the decision of the Court of Common Pleas of Greene County (trial court) which sustained the decision of the Greene County Board of Assessment and Revision of Taxes (Board) as to the fair market value of real estate which is owned by the Appellant, and which deter-

mined that the common level ratio, as opposed to the pre-determined ratio, should be applied to the fair market value. In the second appeal, the Appellant appeals from the decision of the same court directing interest on the refund due the Appellant to be calculated as of the date of the former order. We dismiss the first appeal for lack of jurisdiction, and we affirm the decision of the trial court in the second appeal.

The Appellant owns 51,926 acres of Sewickley vein coal in an area which encompasses 66,000 acres, and which extends into seven townships in Greene County. The Appellant also owns a large block of Pittsburgh vein coal, which is about half the size of the Sewickley reserves, and which underlies the Appellant's Sewickley holdings. During the period from November of 1969 through May of 1983, Appellant acquired the Sewickley coal holdings in small, isolated tracts, and thereby pieced together a large contiguous block of Sewickley coal. The highest price which the Appellant paid for any parcel of property was $65.00 per acre. The Board determined that the value of the entire tract of land, because it was mineable, exceeded the aggregate purchase price paid for each of the individual parcels. For the tax year 1986, the Board set a fair market value of $375.00 per acre for the subject property, and the Board applied the pre-determined ratio to this value. On August 26, 1985, the Appellant filed appeals from the seven assessments. After a hearing by the Board on October 29, 1985, the assessments were affirmed.

The Appellant filed an appeal with the trial court on November 20, 1985, pursuant to Section 704 of The Fourth to Eighth Class County Assessment Law (Law), Act of May 21, 1943, P.L. 571, *as amended* by the Act of December 13, 1982, P.L. 1165, 72 P.S. §5453.704. On August 1, 1986, the West Greene School District

(Intervenor) filed a Petition to Intervene, which was granted on August 12, 1986.

Trial commenced on March 24, 1987. On August 5, 1987, the trial court affirmed the $375.00 per acre fair market value which had been set by the Board, but ordered the Board to apply a common level ratio of 20.7 percent to that value, instead of the 30 percent predetermined ratio which the Board had previously applied. The Appellant filed a Motion for Post-Trial Relief. On August 14, 1987, the trial court directed a hearing upon the motion to be held on September 14, 1987, and stayed all actions pursuant to its August 5, 1987 order. After hearing arguments on the motion, the trial court entered an order on October 9, 1987, dismissing the Appellant's Motion for Post-Trial Relief. This appeal was filed on October 16, 1987.

The Appellant raises two issues, the first dealing with the trial court's finding of fair market value, and the second concerning the assessment rate. The Appellant argues that the trial court's finding of fair market value was in error because the trial court did not apply the statutorily mandated methods of determining fair market value; because comparison between a block of Sewickley coal and a block of Pittsburgh coal is allegedly meaningless without testimony of the sale price of Pittsburgh coal acreage; and because comparison of the price of a ton of processed Sewickley coal and a ton of processed Pittsburgh coal is allegedly meaningless because the coal acreage which is the subject of this appeal is undeveloped. Secondly, the Appellant argues that the assessment rate was not uniform.

Our scope of review is limited to determining whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by the evidence. In the exercise of appellate review we must determine whether the assessment, as determined

by the fair market value of the property, is based on a proper legal foundation, and whether the ratio of assessment to fair market value is uniform within this class of real estate. The finding of value by the trial court must be supported by competent evidence. *Appeal of Avco Corp.*, 100 Pa. Commonwealth Ct. 616, 515 A.2d 335 (1986).

We first address Appellant's contention that the trial court erred by failing to apply the three approaches for determining fair market value, namely cost, comparable sales, and income, the use of which the Appellant claims is mandated by section 602(a) of the Law, 72 P.S. §5453.602(a).

The trial court indicated in its opinion that it had considered and rejected all three methods of valuation. With respect to the cost of acquisition method, the Appellant introduced evidence that it, as well as other buyers of Sewickley coal property, paid considerably less than $375.00 per acre since 1981. The trial court considered and rejected this evidence, relying on testimony that "the value of a large contiguous block of deep-mineable coal, such as the property at issue in this case, differs greatly from the mere sum of purchase prices of small individual parcels of land obtained over a period of years."[1] The trial court also concluded that the comparable sales method was inapplicable because there had been no recent comparable sales of Sewickley coal property in the county. The court also noted that the income approach was inapplicable because the coal reserves were non-income producing. The trial court interpreted Section 602(a) of the Law as requiring the court to *consider*, but not necessarily *utilize*, all three methods. The trial court relied on this Court's opinion in *Avco* to support its position.

---

[1] Trial court's opinion, dated October 9, 1987, at 3.

In *Avco* the trial court had considered the three approaches which are referred to in Section 602(a), but the court rejected the income and cost methods, relying only on the comparable sales approach. We approved the trial court's action, stating that:

> The court and the parties are not required to adopt the traditional methods of comparable sales, capitalization of net income or reproductions less depreciation in determining fair market value, and may use different modes of assessment . . . A difference in the methods or yardsticks or formulae used in ascertaining the *market value* does not prove lack of uniformity if there is a just basis for the application of different methods or formulae. (Emphasis in original.)
>
> . . . .
>
> The trial court, as fact finder, was aware of the various approaches used, and was empowered to decide the weight to be accorded to such testimony. The record indicates that the trial court did, in fact, consider all approaches used, but discarded two approaches and used only the market data approach, giving reasons for so doing. . . . Moreover, section 602(a) of the Law, 72 P.S. §5453.602(a), does not require utilization of all three of the approaches—only that they be considered.

*Id.* at 618-620, 515 A.2d at 337-38.

In the matter *sub judice,* the trial court thoroughly considered each of the three Section 602(a) methods before rejecting them as being inapplicable. We find this action to be in accord with our decision in *Avco.*

Appellant also contends that the trial court's valuation of the coal fields was in error because it was based on allegedly meaningless comparisons between Sewick-

ley coal and Pittsburgh coal.[2] Of course, in a tax assessment appeal, the trial court hears the matter de novo and must determine the fair market value of the property based on the competent evidence presented. *Ciaffoni v. Washington County Board for the Assessment of Appeals,* 112 Pa. Commonwealth Ct. 135, 535 A.2d 247 (1987). In *Ciaffoni,* we approved the consideration of various factors in valuing coal fields, as set forth in *Philadelphia & Reading Coal & Iron Co. v. Commissioners of Northumberland County,* 323 Pa. 185, 186 A. 105 (1936). We stated that:

> 'The factors to be considered in determining the market value of coal lands have frequently been stated by this court. Besides the prices paid in sales of similar lands due regard must be given to the physical features of the property to be valued. There should be taken into account the location, the formation of the coal strata, the number of veins, their depth, thickness, pitch, basins, their proximity to outcrop, and the character of the separating rock formation; the quality of the coal, and whether of a gaseous or nongaseous nature; the kind of overlying surface; the availability of the coal and difficulty in mining it; the probable quantity of the merchantable coal in the ground with allowance for loss in mining; the state of development of the property, the demand for the product, and all elements which a prudent purchaser would take into consideration. . . .'

---

[2] Although the Appellant claims that there was no proof of the cost of Pittsburgh coal acreage, testimony indicated that the Appellant purchased its underlying Pittsburgh seam at a cost of $750.00 per acre in 1977. Notes of Testimony, March 23-25, 1987, (N.T.), Reproduced Record (R.R.) at 237a. (The official transcript has not been filed with the official record.)

*Ciaffoni* at 141-42, 535 A.2d at 250 (citing *Philadelphia & Reading Coal & Iron Co.* at 189, 186 A. at 108 (1936)).

The trial court properly based its valuation on the testimony concerning the Sewickley coal's quantity, quality, thickness, continuity, degree of difficulty of mining and potential markets.[3] We thus dismiss this contention of error.

Appellant's final contention in its first appeal, that the assessment rate was not uniformly applied, is based on the premise that the actual fair market value of the subject property is substantially less than the $375.00 per acre value which the trial court adopted. Having determined that the trial court's valuation was proper, we must also dismiss this contention.

Although we would affirm the trial court's opinion based on the foregoing discussion, we must dismiss the Appellant's first appeal as untimely filed. The appeal was not filed within thirty days of the trial court's August 5, 1987, opinion and order; instead, it was filed within thirty days of the trial court's October 9, 1987, opinion and order dismissing the Appellant's motions for post-trial relief. As we held in *Ciaffoni, supra* at 143, 535 A.2d 250, a tax assessment appeal is a statutory appeal and Pa. R.C.P. No. 227.1 is inapplicable unless specifically authorized by statute or local rule. The Law does not provide for post-trial relief,[4] and we are unable to discover an applicable local rule. No appeal having

---

[3] Opinion of the trial court, dated August 5, 1987, at 4.

[4] *Accord Westinghouse Electric Corporation (R & D Center) v. Board of Property Assessment, Appeals and Review,* 118 Pa. Commonwealth Ct. 152, 544 A.2d 1088 (1988) (same principle applied to the General County Assessment Law, Act of May 22, 1988, P.L. 853, *as amended,* 72 P.S. §§5020-101-602).

been taken from the August 5, 1987, order,[5] we must quash this appeal.[6]

The second appeal arises from the underlying tax assessment case. The Appellant paid under protest the 1986 real estate taxes which the Intervenor had assessed against it, and as required by Section 5453.704 (e) of the Law, 72 P.S. §5453.704(e), the Intervenor established a separate, interest-bearing account at a financial institution, and deposited in the account 25 percent of the 1986 real estate taxes as assessed. Because the trial court's order (that the 20.7 percent common level ratio should be used to compute the amount of taxes due, as opposed to the 30 percent pre-determined ratio) lowered the amount of 1986 taxes which the Appellant actually owed, the Appellant was entitled to a refund. Consequently, on August 5, 1987, the trial court directed the Intervenor to "return any monies held in escrow to petitioner [Appellant] to the extent that the tax liabil-

---

[5] The trial court, in its August 14, 1987, order (setting a time for hearing upon the Appellant's post-trial motion) directed that "all actions to be taken pursuant to the order of August 5, 1987 shall stay." This "stay" of the order did not toll the thirty day appeal period, pursuant to Pa. R.A.P. No. 1701(b)(3). In *Zoning Board of Adjustment of the City of Philadelphia v. Willits Woods Associates*, 112 Pa. Commonwealth Ct. 24, 28 n.3, 534 A.2d 862, 864 n.3 (1987), the trial court *"expressly vacated* its prior order in order 'to consider the motion for reconsideration.' " We held that such action constituted "the functional equivalent of an express grant of a motion for reconsideration," and sufficed to toll the appeal period, even though the trial court declined after reconsideration to alter its earlier decision of the merits. The instant facts are distinguishable, in that the trial court herein did not *vacate its order;* instead the trial court merely *stayed any action* pursuant to the order.

[6] Following the lead of *Ciaffoni,* we have resolved the merits of this case, in the interest of judicial economy, should it be later determined that we have erred in dismissing the appeals on jurisdictional grounds.

ity computed at the common level ratio is less than the amount of the tax liability based on the pre-determined ratio." Previously, and with permission of the court, the Intervenor, on June 26, 1987, withdrew the total amount contained in the escrow account and applied it to the Appellant's 1987 tax obligations.

On September 29, 1987, by Stipulation, the parties agreed that the Intervenor would provide a full credit for the Appellant's 1986 tax overpayment against its then-pending 1987 liability, and that the Intervenor would pay interest on the refund which was due. Subsequently, a dispute arose concerning the date on which interest began to accrue on the refund due. The Appellant contended that interest began to accrue as of the date on which it had paid its 1986 taxes. The Intervenor contended that the interest began to accrue as of August 5, 1987, the date on which the trial court determined that the Appellant was entitled to a refund of part of its taxes. The Intervenor petitioned the trial court to resolve this dispute, and on November 23, 1987, the trial court directed that the Intervenor pay interest dating from August 5, 1987. This appeal followed.

The case of *Welsh Grant Developers Co. v. Board of Revision of Taxes*, 94 Pa. Commonwealth Ct. 159, 503 A.2d 98 (1986) is dispositive. In that case the appellant appealed from a decision by the trial court directing payment of interest on the amount of a tax refund from the date of a court-approved settlement. The refund was due because the settlement had reduced the assessment. The issue before this Court in that matter was the same as the issue in the matter currently before us: whether the interest on the refund should be calculated from the date of payment under protest or from the date of the court-approved settlement. We relied on our Supreme Court's decision in *Cities Service Oil Co. v.*

*Pittsburgh,* 449 Pa. 481, 297 A.2d 466 (1972), stating that:

> [W]here a tax is paid under protest and is subsequently determined to be invalid, interest on the refund accrues from the date of payment; where the amount of the tax assessed is at issue, interest on any refund ordered accrues from the date of the tax reduction decision.

*Id.* at 161, 503 A.2d at 99. We interpreted "invalidity" to mean that the legislative levy itself was invalid, as opposed to an improper, or even illegal, computation of assessment. The Appellant would have us distinguish the instant case from *Welsh* based on the existence of the utilization of the escrow account and the apparent lack thereof in *Welsh.* The lack of reference to an escrow account in that case does not necessarily indicate that an escrow account was not involved. More importantly, the existence of an escrow account does not distinguish this case from *Welsh* in any meaningful way.

Based on the foregoing discussion, we dismiss the appeal from the trial court's order of August 5, 1987, and we affirm the trial court's order of November 23, 1987.

## ORDER

AND NOW, this 2nd day of December, 1988, the appeal from the decision of the Court of Common Pleas of Greene County dated August 5, 1987, is dismissed. That court's order dated November 23, 1987, is affirmed.

Judge MACPHAIL did not participate in the decision in this case.