620 A.2d 721

Robert MILAN and Valerie Milan, his wife, Appellants,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT
OF TRANSPORTATION and Dwayne Edward
Miner, Appellees.

Commonwealth Court of Pennsylvania.

Argued Oct. 19, 1992.

Decided Feb. 4, 1993.

278

David M. Landay, for appellants.

J. Elise Tourek, Sr. Deputy Atty. Gen., for appellees.

Before PALLADINO, and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Appellants, Robert and Valerie Milan (Milans) appeal the order of the Court of Common Pleas of Allegheny County (trial court) which denied Milans' motion for post-trial relief, and thereby refused to overturn a jury verdict entered in favor of the Milans and the Commonwealth of Pennsylvania, Department of Transportation (DOT) and against the additional defendant, Dwayne E. Miner (Miner). We affirm.

This action was brought as a result of a tragic automobile accident involving Robert Milan and Miner which occurred on March 29, 1988. According to evidence introduced at trial, Robert Milan was the passenger in an automobile owned and driven by Miner. The accident occurred as Miner entered the Bridgeville exit ramp off Interstate 79 in Allegheny County, travelling at approximately 55 or 60 m.p.h. While attempting to negotiate the "S" shaped exit ramp, Miner encountered gravel on the berm and lost control of the vehicle. The vehicle went off the roadway, crashed into a guardrail, and catapulted over an embankment on the right side of the road. Both occupants were ejected from the vehicle. As a result of the accident, Milan suffered a severed spinal cord, rendering him a quadriplegic. Miner, who refused medical service following the accident, was an unlicensed and uninsured motorist.

Suit was instituted by the Milans against DOT for the allegedly dangerous condition of the highway and ramp. Spe-

cifically, the Milans alleged that DOT was negligent in failing to erect an advisory speed limit sign on the exit ramp to warn drivers to lower their speed while exiting the highway. The Milans further alleged that DOT was negligent in failing to remove from the road and/or berm anti-skid material which was used by DOT during winter maintenance operations.

DOT then joined Miner as an additional defendant to the action. Miner voluntarily appeared for a deposition regarding this matter, but failed to file a responsive pleading to the complaint to join filed by DOT. Therefore, all averments made by DOT in the complaint to join were deemed admissions [1] and were introduced to the jury in DOT's case-in-chief as being binding and conclusive with regard to Miner's actions.

At trial both the Milans and DOT presented extensive evidence, including the testimony of expert witnesses. Miner, on active duty for the Marines, did not appear at trial, nor was he represented by counsel at any time during these proceedings.

Following the close of evidence and charge to the jury, the jury answered special interrogatories. Specifically, the jury found that DOT was not negligent and Robert Milan was not contributorily negligent. They further found that Miner's negligence was a substantial factor in bringing about Milan's harm and that 100% of the causal negligence was attributable to Miner.

Following the jury's verdict in favor of the Milans and against Miner, the Milans filed a motion for post-trial relief, requesting a new trial. The motion was denied by the trial court.[2] Appeal to this court followed.

1. Pa.R.C.P. 2255(c).

2. The trial court in this case failed to draft an opinion in support of its order as required by Pa.R.App.P. 1925(a), choosing instead to adopt DOT's entire brief in opposition to Milans' motion for post-trial relief as its opinion. Specifically, the trial judge stated that he was convinced, after substantial review of Milans' statement of matters complained of on appeal, that all asserted points of error were thoroughly treated in the brief of DOT in opposition to the motion for post trial relief. He further stated that DOT's brief, thoroughly documented by reference to the notes of testimony, explained and supported the court's rulings in a

■ Our scope of review of an order of a trial court denying a motion for a new trial is limited to a determination of whether the trial court abused its discretion or committed a clear error of law. *Henry v. McCrudden*, 133 Pa.Commonwealth Ct. 231, 575 A.2d 666, *petition for allowance of appeal denied*, 526 Pa. 651, 585 A.2d 470 (1990).

## I. DRIVING RECORD

On appeal, the Milans raise three separate issues which concern Miner's driving record: (1) whether the trial court abused its discretion in admitting evidence that Miner was operating the vehicle without a valid license at the time of the accident; (2) whether the trial court erred in instructing the jury that Miner's failure to have a valid driver's license was negligence as a matter of law; and (3) whether the trial court abused its discretion in sending out with the jury a redacted version of Miner's driving record which contained references to traffic offenses unrelated to this accident.

■ The Milans first contend that the trial court erred in admitting evidence that the driver of the automobile, Miner, was driving without a valid driver's license. Specifically, the Milans claim that the jury should not have been exposed to that portion of Miner's videotaped deposition where DOT confronted Miner with his previous inconsistent statements and produced evidence which directly contradicted Miner's testimony regarding the status of his driver's license at the time of the accident.[3]

cohesive and well researched manner consistent with the approach otherwise taken by he and his staff in composing an original opinion. While the trial court's action is technically correct according to the Pennsylvania Rules of Appellate Procedure, we find the adoption of a party's brief, which is necessarily prepared from an advocate's point of view, wholly inappropriate. A trial court opinion should reflect the independent thought and reasoning of the court. While we are well aware of the enormous caseload of the trial courts in this Commonwealth, this type of corner cutting in an attempt to save time and effort is frowned upon by this court.

3. At Miner's deposition, Miner testified that at the time of the accident he thought his Florida license was valid and he denied having applied for a Pennsylvania license. DOT successfully contradicted this testimo-

However, because Miner was the only other witness to this accident besides Robert Milan, Miner's credibility, specifically, his character for truthfulness, was material, relevant, and directly at issue. *See* L. Packel & A. Poulin, *Pennsylvania Evidence* at 124 (1987) (The credibility of every witness is material, and evidence which bears on credibility is relevant.)

In addition, Miner did not participate at trial. Therefore, his videotaped deposition was his only opportunity to describe for the jury the details of how and why, in his opinion, this accident occurred.

■ It is well settled that questions concerning the admission or exclusion of evidence are matters within the trial court's discretion and will not be disturbed on appeal absent a clear indication that its discretion has been abused. *Henry v. McCrudden,* 133 Pa.Commonwealth Ct. 231, 575 A.2d 666, *petition for allowance of appeal denied,* 526 Pa. 651, 585 A.2d 470 (1990).

Given the importance to a determination of liability in this action, Miner's version of the accident and the impact that that evidence may have had on the jury's assessment of Miner's veracity, the trial court did not abuse its discretion in admitting evidence concerning the status of Miner's driver's license at the time of the accident.

■ The Milans next contend that the trial court erred in instructing the jury concerning Miner's failure to have a valid driver's license. They argue that the court, in charging the jury that Miner was negligent as a matter of law if they found he was driving without a valid driver's license, set forth the absence of his driver's license as a factor which alone could establish the standard of care.

■ In determining whether jury instructions given by the trial court constitute reversible error, this court must review the charge in its entirety. *Commonwealth of Pennsylvania, State Police v. Howard,* 113 Pa.Commonwealth Ct. 31, 536

ny by presenting evidence that Miner's Florida license had been suspended, that he was aware of the suspension, and that he had, in fact, applied for a Pennsylvania license.

A.2d 476 (1988). The trial court initially charged the jury with regard to this matter as follows:

Now, we have various acts of assembly of the Commonwealth of Pennsylvania which were in effect at the time of the accident on March 29, 1988. I will, insofar as relevant, give you the language of those statutory provisions.

Those acts of the legislature dictate the duty of care required of someone in the same situation as [Miner], or the plaintiff, Robert Milan, as the same might apply.

If you find that either one of them violated a pertinent act of assembly, then as to any one of them that violates a pertinent act of assembly you would find them to be negligent as a matter of law. . . .

R.R. 458a–459a.

The trial court went on to list the pertinent acts of assembly including, Section 1501 of the Vehicle Code (Code), 75 Pa.C.S. § 1501, which mandates a valid driver's license as a prerequisite to driving a motor vehicle, and Section 1543 of the Code, which provides that a person who operates a motor vehicle on a highway of the Commonwealth while his operating privileges have been revoked and/or recalled has violated the Code.

The trial court later supplemented its charge to the jury regarding a violation of one of the acts of assembly as follows:

This Act dictates the duty of care normally required of a person in the same situation as [Miner]. Ordinarily, the unexplained violation of this Act would constitute negligence as a matter of law. However, in this case, [Miner] has presented evidence in excuse or justification of the alleged violation. Under such circumstances the person offering such excuse has the burden of proof. Therefore, if you, the jury, find that there was a violation of this Act it would only be evidence of negligence which you should consider along with all the other evidence presented on the question of whether or not [Miner] was negligent.

R.R. 468a–469a.

In light of Miner's admissions,[4] which were read to the jury, initially, during DOT's case-in-chief, and again at the beginning of the court's charge to the jury, and the trial court's correction of its instruction regarding Miner's alleged violation of the Vehicle Code, we conclude that the trial court did not commit reversible error in instructing the jury.

■ The Milans' final argument regarding Miner's driving record concerns the trial court's action in allowing a redacted version of that record to be sent out with the jury during its deliberations. The Milans assert that whether Miner's excessive speed caused this accident was a critical issue in this action[5] and therefore, the trial court abused its discretion by allowing the jury to review the redacted version of his driving record which still contained an unrelated speeding conviction.

Both the original and the redacted version of Miner's driving record were exhibits properly introduced and admitted

**4.** As noted previously, Miner, by failing to respond to DOT's complaint to join was deemed to have made various admissions. Those include:
(a) that he failed to operate his vehicle at a safe and moderate speed which would enable him to properly observe the roadway and to avoid the automobile accident complained of in plaintiffs' complaint;
(b) that he failed to keep his motor vehicle under control;
(c) that he operated a vehicle in an impaired condition;
(d) that he operated a vehicle that was in a substandard condition;
(e) that he failed to avoid the collision complained in plaintiffs' complaint by slowing his vehicle, maintaining his vehicle in his lane of traffic;
(f) that he failed to operate his vehicle to avoid inflicting injury or damage upon plaintiffs;
(g) that he was driving too fast for road conditions;
(h) that he failed to take steps to prevent the accident complained of;
(i) that he failed to keep a sharp watchful eye on the road ahead;
(j) that he was inattentive;
(k) that he failed to keep his vehicle under control or to bring it under control or to a stop before striking the guardrail when he knew or could have known that to proceed ahead in such a manner would likely result in injuries and damages to the plaintiffs;
(l) that he failed to adjust the operation of his vehicle in accordance with the existing circumstances;
(m) that he failed to steer properly;
(n) that he failed to apply his brakes properly.
R.R. 316b–317b.

**5.** We again note that Miner has been deemed to have admitted that he was driving too fast for conditions.

into evidence. The Milans do not contend otherwise. The original version was redacted at the Milans' request in order to delete all citations, other than minor point accumulations, which preceded Miner's conviction for driving while intoxicated and his subsequent license suspension.

■ The determination of what documents should go out with the jury is a matter solely within the discretion of the trial judge. *Mineo v. Tancini,* 349 Pa.Super. 115, 502 A.2d 1300 (1986). The general rule in Pennsylvania is that evidence, properly admitted, with the exception of depositions and transcripts of testimony, may be sent out with the jury. *Wilson v. Pennsylvania Railroad Company,* 421 Pa. 419, 219 A.2d 666 (1966); *Whitfield v. Reading Company,* 380 Pa. 566, 112 A.2d 113 (1955). This longstanding legal principle is also applicable when the exhibits, as in this case, are introduced for the purpose of impeachment. *Id.*

Accordingly, we hold that the trial court did not abuse its discretion in sending out with the jury the redacted version of Miner's driving record.

## II. EXPERT TESTIMONY

The Milans next contend that the trial court committed error with regard to the testimony of DOT's expert witnesses, Professor James R. Romualdi and Thomas Clifford Fox. The Milans' argument is twofold. The Milans initially argue that the experts' testimony in response to hypothetical questions was based, in part, on evidence not of record, and therefore, improper. They further argue that the testimony was improper because it concerned the ultimate issue of the case, causation of the accident, and therefore, usurped the jury's role as factfinder.

■ A trial court's ruling on the admissibility of an expert opinion will not be reversed on appeal absent clear error. *B.P. Oil v. Delaware County Board of Assessment Appeals,* 114 Pa.Commonwealth Ct. 549, 552, 539 A.2d 473, 476 (1988).

## A. *Factual Foundation*

 The question posed to each of the experts and their response which the Milans claim were improperly permitted by the trial court are as follows:

To Professor Romualdi

Q: Do you have an opinion based upon your experience and expertise as a civil engineer, training and highway designing, experience in accident reconstruction, familiarity with the accident site, your knowledge of geometry of the ramp involved in this case, Pennsylvania Department of Transportation records, also with reference to the Pennsylvania State Police report, Mr. Miner's deposition, Mr. Miner's statement, do you have an opinion to a reasonable degree of engineering and scientific certainty whether an advisory exit ramp speed sign was required to be erected on this ramp?

A: You also add, by the way, my personal inspection testing of the road, and it is my opinion by all these criteria that [sic] ramp exit speed sign is not necessary for this particular required ramp.

R.R. 278a, 279a.

To Mr. Fox

Q: Mr. Fox, based on your experience in traffic and civil engineering, your knowledge of the geometry of the northbound Bridgeville exit ramp, the state and federal criteria when the erection of a traffic control device such as a ramp exit speed sign is required, your field views of the northbound Bridgeville exit ramp, measurements that you took and your knowledge that you said before what you reviewed in connection with this accident,[6] do you have an opinion to a reasonable degree of engineering certainty as to whether or not an advisory speed sign was required on the northbound Bridgeville exit ramp on Interstate 79?

---

**6.** Mr. Fox had previously testified that he reviewed Miner's statement, the police accident report, the construction plans and the signing plans for the area, and Miner's deposition.

A: It is not.

R.R. 307a, 308a.

The Milans contend that because the police accident report was not admitted into evidence and because both Miner's statement and deposition testimony had been redacted to delete certain information, the trial court erred in allowing testimony based, in part, on those sources.

██ Citing *Kozak v. Struth,* 515 Pa. 554, 531 A.2d 420 (1987),[7] in support of their argument, the Milans state that an expert is subject to the usual rules of evidence and cannot base his opinion on extraneous irrelevant factors not warranted in the record, regardless of his skill and experience. While we agree with this general proposition, we do not believe that the opinions offered by DOT's experts in this case were based on such factors.

With regard to the police accident report, Trooper Spirk testified as to the facts reflected in the report during the Milans' case-in-chief. Therefore, that information is contained in the record. The information redacted from Miner's statement concerned his consumption of alcohol prior to the accident. This information was also of record in that Miner had admitted that he was in an impaired condition when he operated the vehicle. Finally, the information redacted from Miner's deposition included references to his consumption of alcohol as well as his responses to what he might have done if an advisory speed limit sign had been present at the time of the accident. Again, this information is of record because of the judicial admissions made by Miner which are binding and conclusive as to his conduct.

Additionally, our courts have held that experts, by necessity, may rely on the reports of others, not admitted into evidence. See *Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971) (a psychiatrist may base his opinion on reports which were not in evidence prepared by psychologists); *Steinhauer v. Wilson,* 336 Pa.Super. 155, 485 A.2d 477 (1984) (expert

7. In *Kozak,* the expert testified based on his personal knowledge of the reputation of the defendant's undergraduate school and his professors, factors which were irrelevant in that action.

testified as to construction costs, basing his opinion, in part, on estimates not in evidence, which were provided by contractors); *B.P. Oil Co., Inc. v. Delaware County Board of Assessment Appeals*, 114 Pa.Commonwealth Ct. 549, 539 A.2d 473 (1988) (in appeals from tax assessment, valuation experts could rely upon information not offered in evidence); *In re: Glosser Brothers*, 382 Pa.Super. 177, 555 A.2d 129 (1989) (expert testimony on value of stock could be based on appraisals not admissible in evidence).

In order to form an opinion as to the cause of this accident, an expert in accident reconstruction would, by necessity, be required to review the police accident report and the statement and deposition testimony of the only witness with recollection of how the accident occurred.[8] Accordingly, we hold that the trial court did not err in permitting DOT's experts to testify in response to the above stated questions.

B. *Ultimate Issue*

The Milans also contend that Professor Romualdi's testimony went to the ultimate issue of the case, causation of the accident, and was therefore, improper.

The question and answer objected to by the Milans are as follows:

Q: Professor Romualdi, one final question sir. Again, upon your experience and expertise, particularly with respect to highway design and accident reconstruction as well as civil engineering, your knowledge of the actions of the driver in this case, through the Pennsylvania State Police report, his statement, his deposition testimony, which I believe you reviewed, as well as with respect to the Department of Transportation data on this ramp that was available to you, do you have an opinion, sir, to a reasonable degree of engineering and scientific certainty what role Mr. Miner's actions in operating his car played in this accident?

A: I do.

---

**8.** Prior to trial, Milan had no recollection of how the accident occurred. Therefore Miner was the sole witness to this accident who was able to provide information as to the possible cause(s).

Q: What is that opinion?

A: In my opinion, the cause of this accident was totally due to the actions of Mr. Miner both—for reasons I don't know—going off of the road to the right and losing control of the car. . . .

R.R. 305a–306a.

In support of their contention that the trial court erred in permitting this testimony, the Milans claim that because Professor Romualdi was asked to base his opinion as to causation not only on portions of contradictory testimony, but also on facts and testimony not admitted into evidence, the jury was presented with a confusing mixture of fact and opinion.

Having previously determined that the contents of the police accident report, and the minor portions of the documents considered by Professor Romualdi, which were redacted prior to their admission into evidence, were in fact properly in evidence based upon the testimony of Trooper Spirk and Miner's admissions, we hold that the trial court did not err in permitting Dr. Romauldi to testify in response to the above stated question.

### III. ADMINISTRATIVE REGULATIONS

The final issue raised by the Milans is whether the trial court erred in failing to instruct the jury that DOT's compliance with applicable regulations does not establish that it exercised reasonable care. The Milans claim that the charge as given, misled the jury as to a critical issue, and is therefore, grounds for the grant of a new trial.

The challenged portion of the charge is as follows:

I charge you further, members of the jury, an act of assembly of this Commonwealth in effect at the time of this accident occurred provided in Section 6122, 75 Pennsylvania Consolidated Statutes annotated in part that the Department of Transportation on state designated highways may erect official traffic control devices which shall be installed and maintained in conformance with the manual regulations published by the defendant upon all highways as required to

carry out the provisions of this title or to regulate, restrict, direct, warn or prohibit or guide traffic. This Act dictates duty of care required by the defendant, PennDOT. If you find that there is a violation of this provision, you must find the defendant, PennDOT, negligent as a matter of law.

However, before you answer the question of defendant's liability, you must determine whether this negligence was a substantial factor in bringing about the plaintiff's injuries.

R.R. 473a, 474a.

The court then went on to charge the jury with regard to the administrative regulations applicable to DOT in this case.

The Milans contend that this charge was insufficient, and that the trial court should have charged the jury that if they found that DOT complied with state and federal regulations they were not precluded from finding DOT negligent. While case law supports the Milans' contention that compliance with a law or regulation does not establish, as a matter of law, that the actor exercised reasonable care, *Berkebile v. Brantly Helicopter Corp.*, 219 Pa.Super. 479, 281 A.2d 707 (1971), we do not agree that the trial court's failure to specifically instruct the jury as to that fact constitutes reversible error in this case.

As noted previously, this court must review the charge in its entirety to determine whether the jury instructions given by the trial court constitute reversible error. *Commonwealth of Pennsylvania, State Police v. Howard,* 113 Pa.Commonwealth Ct. 31, 536 A.2d 476 (1988).

In addition to the specific charge concerning the administrative regulations applicable to DOT, the trial court instructed the jury regarding the definition of negligence, the standard of reasonableness, and the fact that they were to determine whether DOT was negligent and whether that negligent conduct was a substantial factor in bringing about the injury or harm to the plaintiffs. Therefore, we conclude that the charge to the jury, taken as a whole, accurately reflected the law of

this Commonwealth with respect to DOT's alleged negligence and was not misleading to the jury on this issue.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, February 4, 1993, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

FRIEDMAN, Judge, dissenting.

I would agree with the Milans that the trial court improperly exercised its discretion in admitting the portion of Miner's videotaped deposition where Miner offered inconsistent testimony regarding the status of his driver's license at the time of the accident. Because I believe that this was reversible error, I feel compelled to dissent.

The trial court may properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. *Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Superior Ct. 14, 473 A.2d 584 (1984). For the purposes of this rule, prejudice does not mean detrimental to a party's case, but rather, an undue tendency to suggest a decision on an improper basis. *Id.* Although this decision is entrusted to the trial judge's discretion, I believe that discretion was abused here because the evidence admitted was more prejudicial than probative.

The majority justifies admission of this testimony based on its relevance to the issue of Miner's credibility, his "character for truthfulness." As the only witness to the accident other than Robert Milan, the majority properly attributes great importance to Miner's version of the accident. Having proclaimed the significance of Miner's testimony to the ultimate determination of liability in this action, the majority concludes that the trial court did not abuse its discretion in admitting evidence concerning the status of Miner's driver's license

because of its impact on the jury's assessment of Miner's veracity. I disagree.

Although witness credibility is always relevant, the status of Miner's driver's license was collateral to the crucial issue in this case. Here, the jury had to determine whether Miner caused the accident by negligently operating the vehicle. Whether Miner was properly licensed to drive at the time of the accident was information logically unrelated to this determination of causation. *Emanuel v. Ketner*, 440 Pa. 141, 269 A.2d 759 (1970). It is clear that DOT's cross-examination of Miner elicited evidence in direct conflict with Miner's prior testimony regarding his driver's license; however, this matter had nothing to do with how the accident happened and could only serve to mislead the jury.

The prejudicial character of this evidence is particularly apparent here, where the negative impact of the evidence and the likelihood that its admission would confuse the jury was intensified by the trial court's charge to the jury that Miner's failure to have a valid driver's license was negligence as a matter of law.[1] Linked with this jury instruction, admission of evidence that Miner lacked a valid driver's license could have led the jury to reach its decision based on something other than the legal propositions relevant to the case.

Potentially misleading evidence may be admitted if it is sufficiently probative or important to the case to warrant the risk. *Commonwealth v. McCutchen*, 499 Pa. 597, 454 A.2d 547 (1982). However, I believe that the probative value of this evidence was minimal compared to its potential for prejudice. Extensive, legitimate evidence of Miner's negligence, which is the relevant issue here, existed in the numerous admissions resulting from Miner's failure to respond to DOT's complaint to join. These admissions, twice repeated during the course of the trial, were introduced to the jury as binding and conclusive with regard to Miner's actions during the accident. Thus, in

---

1. The fact that the trial court later revised its instructions to state that driving without a valid driver's license did not constitute negligence as a matter of law but instead was to be deemed evidence of Miner's negligence, does not alter my opinion regarding the impropriety of this matter.

contrast to the opinion of the majority, I can discern no pressing need to have supplied the jury with Miner's inconsistent testimony on a collateral matter, ostensibly to enable it to assess Miner's credibility with regard to his version of the accident, where the jury had an abundance of incontestable evidence on which to base a determination of liability.

Because the evidence regarding the status of Miner's driver's license was more prejudicial than probative in this case, I believe the trial court abused its discretion in admitting this evidence. I would reverse on those grounds.