Victoria SMITH

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and City of Philadelphia.**

**Appeal of CITY OF PHILADELPHIA, Appellant.**

Victoria SMITH

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and City of Philadelphia.**

**Appeal of SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1997.

Decided Feb. 13, 1998.

Alan C. Ostrow, Philadelphia, for appellant.

Robert J. Foster, Philadelphia, for appellee.

Before COLINS, President Judge, SMITH, J., and LORD, Senior Judge.

SMITH, Judge.

The Southeastern Pennsylvania Transportation Authority (SEPTA) and the City of Philadelphia (City) appeal from an order of the Court of Common Pleas of Philadelphia County that denied their respective post-trial motions and entered judgment in favor of Victoria Smith against SEPTA for $130,-230.52 (including $22,564.20 delay damages) and against the City for $14,470.08 (including $2,507.15 delay damages). A jury awarded Smith damages for injuries she received when she tripped and fell on a crack in a sidewalk next to a structure that encloses an entrance to SEPTA's subway system.

SEPTA questions whether the trial court erred, for purposes of applying the real estate exception to sovereign immunity, when it held that SEPTA could be deemed to be the owner or lessee of a public sidewalk, when its lease/leaseback arrangement with the City assertedly does not include the sidewalk, and no other writing establishes that SEPTA owns or leases the property. SEPTA also asserts error in certain evidentiary rulings and in aspects of the trial court's charge to the jury. The City questions whether the trial court erred in not granting judgment in its favor where there was a defective condition of a sidewalk within the right-of-way of a state highway, when this Court has held repeatedly that such claims do not fall within

the sidewalks exception to governmental immunity.

## I

At the southeast corner of the intersection of Broad Street, running north and south, and Oregon Avenue, running east and west, there is a small, one-story, metal-and-glass building known as a "head-house" that encloses the entrance to a SEPTA subway station on the Broad Street Subway Line. The structure is on Marconi Plaza, which is owned by the City. It has a flat, overhanging roof that is supported along the west (Broad Street) side by concrete columns close to but outside of the wall of the building. The building and the roof overhang extend into the official right-of-way of Broad Street but not into the Oregon Avenue right-of-way. The entrance is on the east side. One column on Broad Street is close to the corner of the building at Broad and Oregon. A concrete sidewalk paving block at the base of that column developed a crack that ran the length of the block, past the corner of the building and extending several feet into Oregon Avenue sidewalk area. The crack was one and one-half to two inches high at the base of the column and tapered down; it was approximately one-quarter inch wide.

On August 23, 1991, Smith was walking east along Oregon Avenue en route to the subway station. She crossed Broad Street; when she neared the head-house she tripped on the crack and fell and suffered injuries including aggravations of pre-existing arthritic conditions of her back and left knee. Smith filed a complaint against SEPTA for personal injuries caused by negligence in maintaining the sidewalk. SEPTA filed a third-party complaint joining the City as an additional defendant, alleging that the City owned the sidewalk and was responsible for its maintenance.

The relationship between the City and SEPTA regarding this and other subway lines is governed by the "Lease" and the "Agreement and Lease," both dated September 27, 1968 and executed in connection with SEPTA's takeover of the properties of the Philadelphia Transit Company (PTC), which involved properties owned by PTC and properties that PTC leased from the City. The station at issue here was not built at that time, but Article II of the Lease expressly provided for extensions to the Broad Street Subway.

The trial court permitted testimony *in camera* from a surveyor who, at the City's request, prepared a depiction of the immediate area of the accident, including the curb lines, the "house lines" or limits of the street rights-of-way and the northern portion of the head-house, showing the walls, the overhang, the columns along Broad Street and the paving block with the crack. The trial court decided, over SEPT'A's objection, that giving the jury the full 36–page Lease and 16–page Agreement and Lease would cause unnecessary confusion. The court provided them with copies of the Lease Sections 1.12 (requiring SEPTA to maintain the Leased Properties in good and safe operating condition) and 2.01 (requiring the City to build Broad Street Subway extensions) and part of Section 2.04 (requiring SEPTA to maintain the extensions in first-class physical condition, normal wear and tear excepted).

■ With the agreement of the parties, the trial court reserved ruling upon issues of sovereign or governmental immunity until the filing of post-verdict motions, if necessary. After the jury gave its verdict in favor of Smith and against SEPTA and the City and awarded damages, SEPTA and the City filed their post-trial motions asserting various errors and reasserting immunity defenses. The trial court denied the motions and entered judgment, and SEPTA and the City filed separate appeals to this Court.[1]

## II

### A

■ SEPTA first notes that its liability, if any, must be established under an exception

---

1. This Court's review of a trial court's denial of a motion for post-trial relief is limited to determining whether the trial court abused its discretion or committed an error of law; in addition, the Court must review the record in the light most favorable to the verdict winner and afford that party the benefit of all reasonable inferences that arise from the evidence. *Ellis v. City of Pittsburgh,* 703 A.2d 593 (Pa.Cmwlth.1997).

to the general statutory grant of sovereign immunity. Section 8522(b)(4) of the Judicial Code, 42 Pa.C.S. § 8522(b)(4), provides that among the acts that may result in imposition of liability on the Commonwealth are a dangerous condition of Commonwealth agency real estate and sidewalks, including "leaseholds in the possession of a Comonwealth agency. . . ." The City owns Marconi Plaza; therefore, SEPTA may be responsible only if the sidewalk is included in the lease documents.

SEPTA quotes first from the Recitals of the Agreement and Lease, which require the parties to prepare an "Inventory" of all major facilities and equipment comprising the Transit System, identifying City Properties and SEPTA Properties, and to prepare "plans of the concourse areas adjacent to the Transit System showing which are paid areas for which the operator of the Transit System is responsible and which are free areas for which the City is responsible." Ex. P–10, Agreement and Lease, p. 3.[2] SEPTA asserts that if the limitation relating to concourse plans applies to all areas, then SEPTA was not required to maintain the sidewalk where Smith fell because that is outside a paid area.

SEPTA notes that "Leased Properties" are defined in Section 1.02 of the Lease to include the full Transit System, both City Properties and SEPTA Properties, as well as extensions that might be added. The Inventory attached to the Agreement and Lease, in a listing for surface rail lines, specifies surface track, with related electrical transmission facilities and other appurtenances. However, neither of the lease documents mentions sidewalks.

SEPTA acknowledges the trial court's reliance upon language from the beginning of the Inventory to show that it was not intended to be exclusive, namely, that the Inventory was intended for the convenience of the parties to identify major equipment and facilities comprising the Transit System and that

"the omission of any facility or equipment from this inventory does not indicate in any way that such facility or equipment is not included within the Transit System." Ex. P–10, Agreement and Lease, p. 12. It acknowledges also the trial court's reference to the Inventory listing for the Broad Street Subway System.

However, referring to a 1955 City ordinance, SEPTA contends that the term "facilities" has been limited to "equipment" and that the items mentioned under the surface rail line listing are items of personalty. It argues that interpreting "appurtenances" in the surface rail lines listing to include real estate, such as the sidewalk at issue here, would violate the principle of ejusdem generis. That doctrine requires that contract language be read in context and that general terms following an enumeration of specific terms be construed with reference only to the specific terms. *Royal Insurance Co. (U.K.) Ltd. v. Ideal Mutual Insurance Co.*, 649 F.Supp. 130 (E.D.Pa.), *aff'd*, 806 F.2d 254 (3d Cir.1986). The Court deems this argument to be without any foundation. The Inventory listing for surface rail lines on which SEPTA bases its ejusdem generis contention is under the enumeration of SEPTA Owned Properties, which is separate from (and after) the enumeration of City Owned Properties, where the listing for the Broad Street Subway System appears. The surface rail lines provisions have no relation whatsoever to the Broad Street Subway provisions.

Smith quotes the Broad Street Subway System listing in full. That includes the separate items "Paid Area of concourses and access stairways as shown on City Transit Drawing 27666" and "23 Passenger Stations." Ex. P–10, Agreement and Lease, p. 13. Smith stresses the distinct enumeration of "Passenger Stations," without qualifying language, and contends that this provision applies to the head-house involved here, rather than "Paid Area of concourses." [3]

---

2. Because SEPTA's contention is that the lease documents unambiguously excluded the area in question from its responsibility as a matter of law, its reference to other provisions is proper. The trial court's opinion also quoted from provisions not given to the jury.

3. The Lease includes Section 1.23 *"Concourses and Access Ways,"* which confirms SEPTA's right to connect the paid platforms and concourse areas to the adjacent free concourse areas owned by the City so as to permit access by the riding public. Ex. P–9, Lease, p. 19.

## B

■ A lease is a contract, to be interpreted according to contract principles. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). A contract is ambiguous where it is reasonably susceptible to different constructions. *Id.* Whether an ambiguity exists is determined by a court as a matter of law; parol evidence relevant to determining what the parties intended by ambiguous provisions is for the finder of fact. *Id.* This Court agrees that the Lease and the Agreement and Lease did not unambiguously exclude the sidewalk immediately adjacent to the head-house from the properties to be leased by SEPTA. Therefore, the trial court did not err in permitting the jury to interpret the lease and in denying SEPTA's request for judgment notwithstanding the verdict.

■ The jury heard testimony from several witnesses concerning the course of conduct between the parties. Post-agreement conduct is always relevant in interpreting a writing. *Pennsylvania Engineering Corp. v. McGraw–Edison Co.*, 500 Pa. 605, 459 A.2d 329 (1983). As Smith notes, her witness John Hudson was a retired SEPTA porter whose work included maintaining the head-house at issue and who witnessed Smith's fall and assisted her afterward. He stated that his job duties included reporting a dangerous sidewalk crack to his supervisors and that he had reported the crack involved here numerous times. N.T., January 30, 1996, p. 38. He testified also that SEPTA employees repaired the crack on the Monday or Tuesday following the Friday when the accident occurred. *Id.*, pp. 40, 46–48.

A former SEPTA maintenance facilities supervisor testified that SEPTA did some concrete work within a couple of feet of the actual building structure, at the discretion of a foreman, although SEPTA did not feel obligated to make such repairs. N.T., January 31, 1996, pp. 112, 118. A City maintenance supervisor testified that a report to his department of a crack under the overhang of the roof of the head-house would be referred to SEPTA, because it was adjacent to and under the structure controlled by SEPTA. N.T., January 30, 1996, pp. 66–67. Because

the City admitted owning Marconi Plaza, the jury must have found that the site of the accident fell within the area leased by SEPTA in order to have found SEPTA liable. There was sufficient evidence to support such a finding, and the trial court did not abuse its discretion by declining to overturn it.

## III

■ SEPTA argues that it acted only as a volunteer in making any repairs close to the head-house. It cites *Gardner v. Consolidated Rail Corp.*, 524 Pa. 445, 573 A.2d 1016 (1990), which held that Section 323 of the Restatement (Second) of Torts (1965), imposing liability for failure to exercise reasonable care in undertaking gratuitously or for consideration a service necessary to protect another's person or things, does not create a duty where none previously existed; in any event, Section 323 does not apply to government entities, which act in the course of governing and not otherwise. The Court notes, however, that the evidence of SEPTA's history of repairs was used here to aid in interpreting an ambiguous lease, not, as in *Gardner*, to assert that an owner who did not repair a hole in a fence thereby caused injury that a youth sustained on adjacent property.

■ Next SEPTA argues that the testimony of the surveyor should not have been received or that, if it would have assisted the trier of fact, it should have been presented to the jury. SEPTA notes that the City did not identify this witness or the content of his testimony until the time of trial. Although the trial judge stated that he accepted the testimony for his own benefit, on the question of rights-of-way in relation to the legal issues of immunity, this did not lessen the surprise involved. As SEPTA acknowledges, however, a trial court must "balance the facts and circumstances of each case to determine the prejudice to each party." *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 573, 517 A.2d 1270, 1273 (1986). Here, SEPTA does not dispute the accuracy of the information provided by the surveyor, nor has it stated in what manner it was prejudiced by the receipt of the information. This Court concludes that the

trial court acted within its discretion in receiving the testimony relating to the legal issue of immunity, which the trial court reserved to itself throughout the trial.

SEPTA contends that the trial court erred by not providing the jury the complete Lease and the Agreement and Lease. SEPTA's counsel in particular wanted the jury to see the portion of the Inventory attached to the Agreement and Lease listing the properties comprising the Broad Street Subway System, which is quoted above. N.T., February 1, 1996, pp. 74–75. The determination of what documents should go out with the jury is a matter solely within the discretion of the trial court. *Milan v. Commonwealth, Department of Transportation,* 153 Pa.Cmwlth. 276, 620 A.2d 721, *appeal denied,* 535 Pa. 650, 633 A.2d 154 (1993). The lease documents are extremely complex and, as the trial court concluded, in large part irrelevant. This Court cannot conclude that the trial court abused its discretion by sending out with the jury only sections relating to SEPTA's maintenance duties in general, the construction of the Broad Street Subway extensions and maintenance of those extensions.

SEPTA argues briefly that the trial court improperly restricted its cross-examination of the City maintenance supervisor, by sustaining the City's objection when SEPTA's counsel attempted to inquire as to the City's maintenance practices elsewhere in Marconi Plaza, away from the head-house, to rebut the City's position that it was not responsible for sidewalk repairs along state roads. The trial court permitted questioning on the witness' view of the City's duty adjacent to the head-house and out to the curb line in the area of the building but ruled that questions concerning the City's conduct out into Marconi Park were irrelevant. N.T., January 30, 1996, pp. 69–70. The admission or exclusion of trial evidence also are matters within the trial court's discretion, and such rulings will not be disturbed on appeal absent an indication of clear abuse of that discretion. *Milan.* Here again, no such abuse has been shown. The trial court rejected the City's immunity defense; hence, SEPTA was not prejudiced.

SEPTA repeats its "volunteer" argument in the guise of a challenge to the jury charge, but this matter has been dealt with already. SEPTA contends that the jury should have been charged that SEPTA could be liable only if the sidewalk was part of the leased property. It avers that the charge was devoid of mention of ownership or of the lease and that the jury's verdict was based on feelings. The Court notes that the record does not support SEPTA's allegations. In charging on the concept of ordinary care, the trial court did so in terms of an owner and occupier of land. N.T., February 1, 1996, pp. 93–94. In delivering the exhibits to the jury, the trial judge stated that he was giving the applicable portion of the lease, explaining further that the lease was voluminous and that the court had decided not to give the jury most of it, which did not apply. *Id.,* pp. 109–110. The Court agrees with Smith that the charge was adequate.

Finally, SEPTA asserts that the trial court should have charged on the doctrine of non-liability for de minimis defects. It states, inaccurately, that the crack in the sidewalk block was one and one-half inches in length and one-quarter inch high. Testimony and photographs showed that the crack was one and one-half to two inches high at its worst and seven or eight feet long, with a separation of one-quarter inch. Also, SEPTA requested no such charge. Unless a defect is obviously trivial, the question of whether it is sufficient to render a city liable is for the jury. *Aloia v. City of Washington,* 361 Pa. 620, 65 A.2d 685 (1949).

## IV

On one point, however, this Court cannot agree with the trial court, and that is its entry of judgment against both SEPTA and the City. The jury's necessary finding that the sidewalk adjacent to the head-house was covered by the lease agreements meant also that the area was not in the possession and control of the City. Section 2.04 of the Lease places the burden of maintaining the leased properties on SEPTA. Section 3.05 provides for a right of re-entry upon the termination of the lease. The trial

court of course was aware of the rule that a landlord out of possession, in most instances, is not liable for bodily harm to the lessee or others by a dangerous condition that the lessee· knew or should have known to exist. *Kobylinski v. Hipps,* 359 Pa.Super. 549, 519 A.2d 488 (1986). In the absence of proof of some exception such as a lessor's contracting to repair or retaining possession of part of the leased premises, of which there was no hint in the record, there was no basis for the trial court to impose liability upon the lessor City. *Id.; see generally* Restatement (Second) of Torts §§ 356—362 (1965).

The City's motion for judgment notwithstanding the verdict and request to mold the verdict were based upon immunity and asserted inconsistency in the verdict returned and failure to use the City's proposed verdict sheet (the latter two of which had been waived). Nevertheless, the trial court should have granted the motion and molded the verdict to impose damages against the only responsible party, SEPTA. *See Kelly v. Carborundum Co.,* 307 Pa.Super. 361, 453 A.2d 624 (1982), *aff'd,* 504 Pa. 238, 470 A.2d 969 (1984) (Section 7102(b) of Pennsylvania's comparative negligence statute, 42 Pa.C.S. § 7102(b), *as amended,* provides for apportionment of damages only among defendants against whom recovery is allowed). Accordingly, this case must be remanded to the trial court for the entry of judgment against SEPTA for the full amount of the damages determined to be due.[4] In all other respects the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 13th day of February, 1998, the order of the Court of Common Pleas of Philadelphia County is reversed to the extent that it entered judgement in favor of Victoria Smith against the City of Philadelphia. The order is affirmed to the extent that it denied the motion for post-trial relief of SEPTA, and this matter is remanded for

4. Because of the Court's resolution of the issue of the City's liability in this matter, there is no need to address the position advanced by the City but rejected by the trial court that this Court's decisions hold that a municipality does not "own" a

the entry of an order consistent with the foregoing opinion.

Jurisdiction relinquished.

street that has been designated as a state roadway and therefore cannot be liable under the sidewalks exception to governmental immunity in Section 8542(b)(7) of the Judicial Code, 42 Pa.C.S. § 8542(b)(7).