OPINION
Defendant-Third Party Plaintiff-Appellant Shawnee Place Associates, Inc. (hereinafter "Shawnee Place") appeals the trial court's grant of summary judgment to Third Party Defendant-Appellee Thomas G. Snavely. Shawnee Place asserts three assignments of error contending that the trial court misinterpreted certain terms of Snavely's personal guaranty, did not use generally accepted accounting principles in construing the guaranty, and erroneously found that the condition precedent to the guaranty's expiration had been met. For the following reasons, we reverse the judgment of the trial court.
In 1985, Snavely executed the guaranty to induce Homestead Federal Savings Association (hereinafter "Homestead") to issue a letter of credit to Shawnee Building Limited Partnership (hereinafter "SBLP") in connection with SBLP's ownership and development of a project that would provide housing for the elderly. Snavely, who was the president of SBLP, personally guaranteed that, inter alia, he would, if necessary, contribute sufficient cash or cash equivalent to enable SBLP to pay all of its costs, expenses, and liabilities associated with the project as they accrued. Snavely's guaranty to pay SBLP's costs, etc., was to remain in effect only until the operating income from the project had exceeded expenses, including, without limitation, taxes, utilities, employees compensation, and debt service for two consecutive calendar quarters. The guaranty also provided that the law of the Commonwealth of Pennsylvania would govern its construction.
In a letter to Homestead dated March 12, 1992, Snavely communicated his belief that the project had achieved a positive cash flow based on operating results for the second half of 1991, and that his guaranty had thereby expired. He received no response to his letter. In April, 1993, the Treasurer of Clark County, Ohio initiated foreclosure proceedings against SBLP for delinquent land taxes on the project property. On June 1, 1993[1], SBLP defaulted on its loan which resulted in the lender drawing on Homestead's letter of credit. The foreclosure suit mushroomed into a complex assortment of complaints, cross complaints, interventions, and substitutions of parties. Relevant to the present case, Resolution Trust Corporation (hereinafter "RTC") was made a party defendant as conservator of and successor in interest to Homestead in December of 1993, and the following month filed a cross complaint against (by that time) defendant Snavely on his guaranty seeking reimbursement for all sums paid under the letter of credit. Snavely moved for dismissal of RTC's claim on grounds that his guaranty had expired. His motion, which was apparently construed by the trial court to be a motion for summary judgment, was overruled on August 1, 1996. During the pendency of the motion to dismiss, Shawnee Place was substituted as a party in RTC's place after purchasing all right, title, and interest RTC and/or Homestead had in the matter.
In early 1998, the parties submitted cross motions for summary judgment. Shawnee Place claimed that the project's operating income had not exceeded expenses for two consecutive quarters as required for Snavely's guaranty to expire. Snavely's error, Shawnee Place contended, was in failing to employ generally accepted accounting principles (hereinafter "GAAP") in calculating the expenses, and in equating a positive "net cash flow" with the terms under which the guaranty would expire. In addition, Shawnee Place argued that even if Snavely's calculations were correct and the project showed a net cash gain for the second half of 1991, it does not necessarily follow that there was a net cash gain in the third and fourth quarters of 1991, since any gain in one quarter could have offset a loss in the other. Shawnee Place also claimed the project's expenses for the last half of 1991 should have included depreciation, amortization, and accrued interest on mortgage notes for that period. In addition, Shawnee Place contended the income figures relied upon by Snavely included rents collected from transient tenants which were prohibited under the terms of the loan and federal regulations pertaining to government loan guaranties, and, as such, Snavely should be precluded from profiting from his alleged wrongdoing and remain liable on his guaranty.
In support of his own motion for summary judgment, Snavely submitted affidavits from Barry N. Franciscus, Homestead's Vice-President of Administration and Operations at the time Snavely executed his guaranty, and Eric L. Brossman, the attorney hired to represent Homestead in arranging financing for the project. Both men stated that the term in the guaranty providing for expiration of Snavely's liability upon the occurrence of the project's operating income exceeding expenses for two consecutive quarters was intended by Homestead to mean that the operating income would exceed operating expenses, exclusive of capital expenditures, depreciation, or amortization. Snavely argued that the intent of those involved in drafting the guaranty should govern definition of the disputed terms instead of generally accepted accounting procedures, as advocated by Shawnee Place. Snavely also resubmitted his February 28, 1994, affidavit which he had originally appended to his previous motion to dismiss. In it, he referred to the letter he wrote to Homestead notifying them of the expiration of his guaranty, and stated neither Homestead nor its successors in interest had ever refuted the substance of his letter.
The trial court found that the clear and unambiguous language of the document at issue did not include depreciation or amortization in its enumeration of the expenses for which Snavely would be liable under the guaranty. The court also stated that even if it had found ambiguity in the document, it would have been dispelled by the affidavits of Franciscus and Brossman. Therefore, the trial court concluded that the project realized operating income in excess of operating expenses in the third and fourth quarters of 1991, and as a consequence, Snavely's guaranty had expired prior to SBLP's default. Snavely's motion for summary judgment was therefore sustained, and Shawnee Place's was overruled. Thereafter, Shawnee Place filed its notice of appeal in a timely manner.
Shawnee Place asserts three assignments of error. In the first and second assignments, it claims the trial court erred in construing the term "expenses" in the guaranty document as "operating expenses," contrary to the definition given that term by generally accepted accounting principles. In its third assignment, Shawnee Place argues that under generally accepted accounting principles, the project's operating income did not exceed expenses during the third and fourth quarters of 1991.
Preliminarily, we note that an appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. ClevelandCity Schools (July 10, 1997), Cuyahoga App. No. 71283, unreported, citing Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116,119-20. In other words, we review the trial court's decision without according it any deference. Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711.
Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant. With these principles in mind, we proceed first to consider whether the trial court's grant of summary judgment in Snavely's favor was appropriate, after which we will turn our attention to the court's denial of Shawnee Place's motion for summary judgment.
A. Snavely's Motion for Summary Judgment
We find Shawnee Place's third assignment of error to be dispositive on the first question; it reads as follows:
 Under GAAP, operating income did not exceed expenses for the last two calendar quarters of 1991.
In its third assignment of error, Shawnee Place claims neither of the two financial documents submitted by Snavely succeed in demonstrating that the event upon which expiration of the guaranty was conditioned had taken place. Specifically, Shawnee Place argues that the first of these financial documents, SBLP's Statement of Operations showing a net cash flow of $1,914.13 for the six-month period ending December 31, 1991, fails to reveal whether each quarter in that time period produced operating income in excess of expenses as required by the expiration provision of the guaranty. We agree. By its clear and unambiguous terms, the guaranty was designed to expire upon the project's achievement of a positive figure in a comparison of its operating income and expenses for two consecutive calendarquarters. A financial record demonstrating a positive cash flow by aggregating the relevant figures for two consecutive quarters does not provide the necessary information from which one could determine whether the guaranty had expired. We also note that Snavely neither included nor relied upon this document in his motion for summary judgment, but instead filed it with his amended and supplemented affidavit in connection with his earlier motion to dismiss.
The second financial document was submitted by Snavely with his motion for summary judgment, and was one similar to the first except that it purported to show the relevant income and expense figures for each quarter of the last half of 1991 separately, with a third column showing the figures for the combined six-month period. Shawnee Place contended at the time, and again now, that this particular document was not properly authenticated and consequently could not be considered by the trial court in ruling on the parties' cross motions for summary judgment. Again, we agree.
In addition to the financial record objected to by Shawnee Place, Snavely submitted the affidavit of Donald Dumas, an internal accountant employed by Stevens Management Company from 1995 to 1997. Stevens Management was responsible for monitoring real estate projects it managed, and Dumas was the accountant assigned to monitor the project in this case. In his affidavit, Dumas stated that he had prepared the income and expense statements "attached to * * * Snavely's Motion for Summary Judgment * * * as Exhibit C." As was pointed out by Shawnee Place in its memorandum contra Snavely's motion for summary judgment, however, no Exhibit C was attached to Dumas' affidavit, nor was such an exhibit included in the record before the trial court. See Civ.R. 56(E). The financial statement that was submitted, and which showed the income and expense for the third and fourth quarters of 1991, was marked "Exhibit 4," but no authenticating affidavit was ever provided to the trial court. As such, it could not properly have been considered by the trial judge in making a determination on the cross motions for summary judgment.
We hasten to add, however, that there is no indication in the record that the trial court relied on the financial statements marked as Exhibit 4. Instead, the court stated in its opinion that "Shawnee Place does not contest the positive cash flow or at least the break even cash flow for these two calendar quarters * * *." The fact is, Shawnee Place did dispute that fact on page seven of its motion for summary judgment where it stated "Defendant Snavely's assertion that he had a `net cash flow' of $1,900.00 for the last half of 1991 is not the same thing as operating income exceeding expenses for two (2) consecutive quarters, as required for his release from the Guaranty." Before that, Shawnee Place raised the issue in its supplemental memorandum contra Snavely's motion to dismiss and supported its argument with Feltner's affidavit which reiterated the point that showing a positive cash flow for the last half of 1991 does not necessarily result in a conclusion that the cash flow was positive for each of the last two quarters of that year. Shawnee Place also appended Feltner's affidavit to its motion for summary judgment, and his amended affidavit incorporating his first, was attached to Shawnee Place's memorandum opposing Snavely's motion for summary judgment. Furthermore, under the Rules of Civil Procedure and case law applicable to motions for summary judgment, the burden was on Snavely to produce evidence of the type authorized by Civ.R. 56(C) showing no genuine issue of material fact existed for trial. This he failed to do. One of the financial documents discussed did not provide the information necessary to determine whether the guaranty had expired; the other was not authenticated and consequently could not be considered by the trial court.
We also note that we are concerned by the fact that the two financial documents discussed above bear little relation to each other. The figures vary significantly, as do their respective bottom lines. Moreover, no other documentation showing the project's operating income exceeded its expenses for two consecutive calendar months was before the court. As such, Snavely provided the court with no evidence from which it could conclude that the guaranty had expired. We find that, on this record, a genuine issue of material fact exists as to whether the conditions necessary for Snavely to be released from the guaranty have come to pass. Summary judgment in favor of Snavely was therefore improper. To the extent that it applies to the trial court's grant of summary judgment to Snavely, therefore, we sustain Shawnee Place's third assignment of error.
B. Shawnee Place's Motion for Summary Judgment
Shawnee Place's first assignment of error is as follows:
 The trial court mistakenly disregarded the distinction between "operating expenses" and "expenses."
Shawnee Place contends the trial court erred in finding that "[t]he project realized operating income in excess of operating expenses in the third and fourth quarters of 1991." As can be seen by a perusal of the guaranty, the term "operating expenses" does not appear in the expiration provision, which states as follows:
 [T]he guaranty obligation * * * shall remain in effect only until such time as the operating income from the Facility has exceeded expenses, including, without limitation, taxes, costs of utility services, employee compensation and debt service for two (2) consecutive calendar quarters[.]
Shawnee Place claims the trial court's finding erroneously altered the terms of the guaranty by comparing the project's operating income to operating expenses. The effect of the court's finding, Shawnee Place argues, was to leave the expenses of amortization and depreciation out of the equation upon which the court relied to determine whether Snavely's guaranty had expired. When amortization and depreciation expenses are included, as Shawnee Place contends they should be, whatever positive cash flow Snavely claims relieved him of his obligation under the guaranty is more than offset by the increase in expenses. Furthermore, Shawnee Place claims that because the guaranty recognizes "operating expenses" as only one component of "expenses" in another clause, considering the two terms to be synonymous in the expiration clause would render the document internally inconsistent.
We agree with the trial court, however, in its finding that the terms of the document are clear, and that the guaranty's expiration clause contains no reference to amortization or depreciation. The court correctly stated that had the parties wished to include amortization and depreciation in the expiration provision, they surely could have done so. Although not mentioned by the trial court, we observe that the doctrine of ejusdemgeneris supports the court's conclusion that the term "expenses" in the expiration provision is less than all inclusive. "That doctrine requires that contract language be read in context and that general terms following an enumeration of specific terms be construed with reference only to the specific terms." Smith v.Southeastern Pennsylvania Transp. Auth. (Pa. 1998), 707 A.2d 604,608. It is noteworthy that the examples of "expenses" contained within the expiration clause, namely utilities, employee compensation, and debt service, are all operating expenses requiring actual expenditures on SBLP's part. Amortization and depreciation expenses are dissimilar in that they are neither operating expenses nor do they require an outlay of funds by the company. The specific terms following the term "expenses" in the expiration clause define and limit the expansiveness with which the more general term "expenses" may be construed. Amortization and depreciation are expenses qualitatively dissimilar to those listed in the expiration provision, and, under the doctrine ofejusdem generis, could not be included in the "expenses" to be considered when determining whether Snavely's guaranty had expired.
We are also unconvinced that the document is rendered internally inconsistent by construing "expenses" as that term is used in the expiration clause as the trial court did, and as we do now. It is doubtful that anyone would dispute the core truth that operating expenses are but one type of expense. Nevertheless, terms are not to be construed in isolation. That the guaranty also lists "operating expenses" as one of the project's "costs, expenses and liabilities" does not negate the fact that the later reference to "expenses" in the expiration clause is circumscribed by the specific examples listed.
Therefore, for the same reasons cited by the trial court, fortified by application of the doctrine of contract constructionejusdem generis, we find that "expenses," as that term is used in the guaranty's expiration provision, cannot be construed in its most expansive meaning, and does not include amortization or depreciation expense. Accordingly, Shawnee Place's first assignment of error is meritless.
We now turn to Shawnee Place's second assignment of error, which is as follows:
 The GAAP definition of "expenses," rather than Mr. Snavely's self-serving definition, applies to the guaranty.
In its second assignment of error, Shawnee Place claims other documents executed in connection with the project mandate the use of GAAP in calculating operating income and expenses to determine whether Snavely's guaranty expired. In essence, Shawnee Place argues that because the guaranty itself did not contain a specific statement as to how operating income and expenses were to be calculated, and because other documents pertaining to SBLP and the loan on the project stated that the partnership books and its profits and losses should be determined in accordance with GAAP, the guaranty should also be construed using GAAP. Doing so would result in a loss for the project during the last two quarters of 1991 according to Shawnee Place. We are not persuaded that GAAP is applicable to the guaranty, however.
It is a basic principle of contract law that when two or more writings involve the same transaction, they should be construed together. Black v. T.M. Landis, Inc. (Pa.Super. 1980),421 A.2d 1105, 1107. This is true even where the parties to each writing are not the same, or when the documents are executed at different times. Western United Life Assurance Co. v. Hayden (C.A.3, 1995),64 F.3d 833, 842. Thus, Snavely's guaranty is to be construed in light of the other documents pertaining to the financing arrangements of the project.
Shawnee Place contends two of those documents specifically state that GAAP is the standard to be used in keeping or making certain records or calculations. First, Shawnee Place directs us to the limited partnership agreement in which SBLP was formed. That document required the partnership's profits and losses be calculated, and the partnership books be kept, in accordance with GAAP. In addition, the open-end mortgage and security agreement relating to the project required SBLP to use GAAP in keeping the records and books for the project. As the trial court found, however, these facts do not indicate in any way that GAAP should guide construction of Snavely's guaranty.
Shawnee Place also appears to argue that the merger clause of Homestead's commitment letter causes the previously discussed documents' provisions regarding GAAP to apply to the guaranty generally and the expiration clause specifically. The merger clause states as follows:
 [A]ll prior agreements and representations with respect to the purchase and sale of the Bonds or issuance of the Letter of Credit are merged herein. The terms of this letter shall survive the purchase of the Bonds by the Holders and issuance of the Letter of Credit, provided that in the event that any terms or provisions of any of the loan documents conflict with the provisions of this commitment letter, the terms and provisions of the loan documents shall control.
 This clause, however, says nothing about the applicability of GAAP to the terms of the guaranty, nor could it have, since it was prepared and executed prior to the guaranty document. As such, and because the clause by its terms applies only to prior agreements and representations, and is subordinate to any subsequent loan documents, it has no effect on the guaranty, nor does it accomplish the feat attributed to it by Shawnee Place.
Consequently, we, like the trial court, find no evidence in the record to support Shawnee Place's contention that GAAP governs construction of the guaranty. We accordingly overrule Shawnee Place's second assignment of error.
Shawnee Place's third and final assigned error is as follows:
 Under GAAP, operating income did not exceed expenses for the last two calendar quarters of 1991.
For the most part, Shawnee Place's arguments under its third assignment of error rely upon a finding that GAAP are applicable to the guaranty's terms and that amortization and depreciation are resultantly included in the term "expense." We have dispensed with this argument above, however, and see no reason to expound any further on that point.
In addition, however, Shawnee Place claims that even if the financial statements provided by Snavely had been authenticated, the inclusion of certain income and the exclusion of certain expenses (other than amortization and depreciation) would more than offset any excess net operating income over expenses for the last two quarters of 1991. Specifically, Shawnee Place contends the accrued interest on mortgage notes that were in default and income from rentals to allegedly "transient" tenants should have been included on the financial statements.
The trial court did not address these arguments by Shawnee Place even though both issues were placed before the court in Shawnee Place's supplemental memorandum contra Snavely's motion to dismiss, and incorporated by reference into Shawnee Place's motion for summary judgment. We find that there is no evidence of the type authorized by Civ.R. 56(C) in the record to establish the relevant income and expense figures for the period in question. It is, therefore, not possible for us to evaluate the merits of Shawnee Place's evidence and arguments concerning the accrued interest and rental income, nor was it possible for the trial court to do so earlier. For this reason, the trial court's denial of Shawnee Place's motion for summary judgment was not error. Shawnee Place's third assignment of error is overruled as it pertains to the trial court's denial of its motion for summary judgment.
In conclusion, we reverse the trial court's grant of summary judgment in Snavely's favor, affirm its denial of Shawnee Place's motion for summary judgment, and remand this case for further proceedings consistent with this opinion.
BROGAN, J. and WOLFF, J., concur.
Copies mailed to: Richard F. Heil, Jr., Regina Watson, Thomas J. Intili Stephen C. Weingrad, Hon. Gerald F. Lorig.
[1] Although the date of the default is neither at issue nor dispositive in this case, we note that in the trial court's opinion, the date of SBLP's default is stated as "June 1, 1996." In their memoranda supporting their own and opposing the other party's motions for summary judgment, however, both parties state that the default occurred on June 1, 1993. In addition, SBLP's default was the subject of litigation prior to 1996, indicating that the date in the trial court's opinion is the result of typographical error.